THE PENNROAD CORPORATION AND AFFILIATED COMPANIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33309. Promulgated March 31, 1954.

*William R. Spofford, Esq.,* and *Charles S. Jacobs, Esq.,* for the petitioner.

*Brooks Fullerton, Esq.,* for the respondent.

1094

OPINION.

ARUNDELL, *Judge:* The principal issue herein involves the tax treatment of $15,000,000 received by petitioner from Pennsylvania in settlement of two derivative stockholders' suits alleging, in substance, that through Pennsylvania's domination and control of petitioner it had caused petitioner to make certain investments with the primary intention of benefiting Pennsylvania rather than petitioner, and to pay excessive prices for the securities acquired. It was charged that Pennsylvania, by reason of the interlocking directorate and the voting trust arrangement, and in light of the admitted organization of peti-

tioner as an expedient means of accomplishing its own purposes, otherwise barred by regulations of the Interstate Commerce Commission, had placed itself in a fiduciary relationship, the breach of which resulted in heavy losses to petitioner.

At the time of the settlement the *Overfield-Weigle* suit had been tried in the District Court and judgment in the amount of $22,104,-515.92 entered against Pennsylvania, itemized as set forth in our Findings of Fact. On appeal, the Court of Appeals set aside the judgment holding that recovery was barred by the statute of limitations of Pennsylvania which applied to the controversy. The majority did not reach the merits of the claim of petitioner against Pennsylvania. The dissenting circuit judge, however, was of the opinion that the claim was not barred and, furthermore, that the District Court had improperly applied the rule of damages to petitioner's claim. He would have applied a rule which would have resulted in a recovery far in excess of the $22,104,515.92 awarded by the District Court. Petitioner and the complaining stockholders had applied for and been granted extensions of time within which to file petitions for rehearing before the Court of Appeals.

The *Perrine* suit was still pending in the Delaware court.

It is the respondent's position that the net amount received in settlement of the suits against Pennsylvania, $12,060,809.73,[4] should be allocated for the purpose of tax computation in the manner employed by the District Court in the *Overfield-Weigle* proceedings. We are asked to attribute that entire amount to those few acts of Pennsylvania for which the District Court, employing its unique measure of liability, would have awarded damages in the proportions applied by that court. Under this theory, respondent finds that the amount attributable to one investment exceeds petitioner's unrecovered basis for that investment by $569,292.99, which amount he would tax as ordinary income.[5] He would also tax in full the amount attributed by him to Pennsylvania's profits from its dealings with National Freight Company.

We disagree with respondent's theory of allocating the settlement according to a ratio based on the formula on which the District Court determined its judgment of $22,104,515.92 in the *Overfield-Weigle* suit. We conclude that the record shows that the $15,000,000 was paid not merely in settlement of the *Overfield-Weigle* proceedings but of all the matters resulting from Pennsylvania's derelictions, includ-

---

[4] Fifteen million dollars minus two allotments for legal fees and expenses of $2,797,195.69 and $141,994.58.

[5] Petitioner disputes respondent's computation of the unrecovered basis for the National Freight investment claiming that when properly computed the basis exceeds the amount of the settlement allocated by respondent to this investment. Our disposition of the case makes it unnecessary to decide this dispute.

ing the assertions in the *Perrine* suit. Clearly, the statute of limitations of Pennsylvania, which was the basis of the reversal of the District Court proceedings, had no application to the *Perrine* case which had been filed in the Delaware courts as early as 1932. Had the *Perrine* suit gone to trial, the result could have been anything from complete denial of relief to an award many times greater than that of the District Court. Moreover, the possibility of further appeal in the *Overfield-Weigle* proceedings kept open the full range of possibilities as to the ultimate liability resulting from that litigation.

Therefore, at the time of the settlement agreement, there had been no final adjudication of the merits of the complaints nor could the parties to the settlement accurately determine the full extent of the liability of Pennsylvania to Pennroad. We do not understand respondent to contend that the District Court's award of $22,104,515.92 was intended as a measure of petitioner's *damage* through the acts complained of since the opinions of that court make it clear that its judgment set forth its findings only as to Pennsylvania's *liability* to petitioner. The measure of liability imposed by that court was not in fact the measure generally imposed after a finding of a breach of fiduciary relationship. The analogy to the law of trusts being apparent, we quote from 2 Scott, Trusts, section 205.1:

It is no defense to the trustee that if he had purchased proper trust investments there would probably have been a loss equally great because of general economic conditions and the general fall in values. In such a case the loss results from the breach of trust, although it is possible that a similar loss would have occurred even if there had been no breach of trust.

The District Court in its original opinion (42 F. Supp. 586, 616) recognized this principle, saying:

Generally speaking, a fiduciary is under a duty to administer the trust solely in the interest of the beneficiary, and upon failure to do so, he is chargeable with any loss or depreciation resulting therefrom, and even though a similar loss might have occurred due to economic conditions in the absence of such breach.

The District Court, however, for equitable reasons which it deemed sufficient adopted an unusually restricted measure of liability.

We have found as a fact that although petitioner at the time of settlement still retained the majority of the securities in question with a remaining cost in excess of $93,000,000, it had sustained actual losses of $22,250,033.81 on the disposition of the balance of the securities, plus an actual net loss of $3,852,000 on the investment in National Freight Company. The record leaves no doubt that as to those securities retained by petitioner losses running to many millions of dollars had been suffered and we think it significant that in 1938 petitioner reduced the ledger values of 3 of the securities still held by

petitioner by nearly $63,000,000.[6] Moreover, petitioner's unrecovered basis for only those 4 investments on which the District Court made awards was many times the entire amount received in settlement.

We think that respondent's insistence on treating each investment complained of as a separate claim to which a portion of the settlement must be allocated is unwarranted. The several transactions were actually nothing more than steps in the carrying out of Pennsylvania's plan to create and use petitioner as a vehicle for its own purposes otherwise barred by governmental restrictions. The basic nature of the claim lay in losses arising from a series of Pennsylvania's acts in furtherance of a continuing conspiracy.

The sum received by petitioner in settlement was only a fraction of the losses it sustained by reason of Pennsylvania's actions. As stated in *Lucas* v. *American Code Co.*, 280 U. S. 445, 449, the law is concerned only with realized losses and realized gains and "In order to determine whether there has been gain or loss, and the amount of the gain if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration." *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179, 185. In *Drier* v. *Helvering*, 72 F. 2d 76, the court was confronted with a case where an award made by a mixed claims commission was in terms of both principal and interest. The Court of Appeals concluded, however, that if the total sum received was not sufficient to restore the capital value that existed at the commencement of the period under consideration there was no taxable income. Cf. *Helvering* v. *Drier*, 79 F. 2d 501; *Commissioner* v. *Ullman*, 77 F. 2d 827.

Under the circumstances present in the instant case, we think that to apply to the settlement the allocation set forth in a vacated judgment covering only one of the suits involved and adopting an unusual measure of liability would be arbitrary and unreasonable.

We hold, accordingly, that the entire sum received in settlement constituted a recovery of capital resulting in no income taxable to the petitioner.

An additional issue is raised as to certain legal fees and expenses amounting to $141,994.58. The expenditures in question are principally those paid to counsel by petitioner after abandoning its earlier position of neutrality and actively participating in the litigation against Pennsylvania. Petitioner contends that since these fees were not contingent upon the outcome of the litigation but payable in any event and since they were paid from the general funds of petitioner rather than from that portion of the recovery set aside for counsel fees, they are deductible under section 23 (a) (1) (A) of the Internal

---

[6] Boston & Maine Railroad, Canton Company of Baltimore, and Pittsburgh & West Virginia Railway Company.

Revenue Code as ordinary and necessary business expenses. We find no merit in this contention. It is well settled that expenses of acquiring, perfecting, or recovering title to property are nondeductible capital expenses. *Virginia Hansen Vincent*, 18 T. C. 339, 348. In *Helvering* v. *Stormfeltz*, 142 F. 2d 982, the question involved the deductibility of expenses of a suit against a guardian for wrongful appropriation of guardianship funds. While that portion of the legal expenses allocable to the recovery of interest was held to be deductible, the part attributable to recovery of principal was held to be a nondeductible capital expenditure analogous to title defense litigation. Having found in the case at bar that the settlement represented recovery of capital, we think it clear that the fees and expenses paid in connection with that settlement were of a capital nature and may not be deducted as ordinary and necessary business expenses.

Reviewed by the Court.

*Decision will be entered under Rule 50.*