ESTATE OF JAMES N. COLLINS, DECEASED, FIRST NATIONAL BANK AND TRUST COMPANY OF MINNEAPOLIS, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106566. Promulgated March 27, 1942.

*John W. Windhorst, Esq.*, for the petitioner.
*S. U. Hiken, Esq.*, for the respondent.

OPINION.

TURNER: The respondent determined a deficiency in income tax for 1939 in the amount of $2,331.04. The issue is whether a sum of money recovered by the decedent in the taxable year as a result of litigation involving certain stock transactions in prior years constitutes a return of capital, as contended by petitioner, or taxable income, as contended by the respondent. The parties have filed a written stipulation of facts, with certain exhibits attached thereto, and the

Board adopts such stipulation as its findings of fact. We shall recite only the facts deemed necessary to the discussion of the issue presented.

The decedent, James N. Collins, died on April 21, 1941, a resident of Hennepin County, State of Minnesota. He filed his income tax return for 1939 with the collector of internal revenue at St. Paul, Minnesota. The petitioner is the duly appointed executor of his estate.

In 1929 the decedent purchased 300 shares of the capital stock of the National City Bank of New York. The stock also carried certain beneficial interests in the stock of the National City Co. of New York. The purchase was made in the State of Minnesota from the National City Co. In 1930 the decedent sold 100 shares of the stock, which had cost him $56,200, for $14,599.20, thereby sustaining a deductible loss for Federal income tax purposes in the amount of $41,600.80. This loss was claimed as a deduction in his 1930 return and was allowed by the respondent. In 1931 the decedent sold 100 shares of the stock, which had cost him $37,100, for $8,936.22, thereby sustaining a deductible loss for income tax purposes in the amount of $28,163.78. This loss was claimed as a deduction in his 1931 return and was allowed by the respondent. The remaining 100 shares of stock referred to were still owned by the decedent at the time of his death.

Until the fall of 1936 the decedent regarded the aforesaid purchases and sales as closed and completed transactions. During that fall he learned for the first time that the stock had not been registered in accordance with the requirements of the Minnesota Blue Sky Laws and further learned of facts which led him to believe that the sales by the company to him might have been fraudulent. On August 23, 1937, he filed suit against the National City Co. in an effort to recover the amounts which he paid for the stock, alleging that the stock had been sold to him without having been registered in accordance with the requirements of the Minnesota Blue Sky Laws and that the sales had been fraudulent. He asked for a rescission of the entire transaction and tendered to the defendant company the proceeds of said stock, or an equivalent number of shares of stock of the bank, plus interest and dividends received.

In 1939 the suit was settled by a payment of $67,725.95 by the company to the decedent, such amount representing 84 percent of the losses he had sustained in his dealings with the stock. After deducting attorney's fees and other expenses in connection with the suit, the decedent had a net recovery of $45,150.63. On March 28, 1939, the suit was dismissed, with prejudice, pursuant to stipulation of the parties. Of the total net recovery, $29,750.63 is allocable to the stock sold by the decedent in 1930 and 1931, of which $23,296.45 is allocable to the stock sold in 1930 and the balance of $6,454.18 is allocable to the stock sold in 1931.

If the entire deductions of $41,600.80 for 1930 and $28,163.78 for 1931, claimed and allowed on the decedent's returns for those years, had been disallowed, the returns still would have shown net losses for those years. If the decedent had received $23,296.45 on the sale of the stock in 1930 in addition to the amount actually received on such sale, and if he had received $6,454.18 on the sale of the stock in 1931 in addition to the amount actually received on such sale, his 1930 and 1931 net losses would have been $42,600.06 and $33,750.72, respectively, and he would have had no income tax liability for either year.

Throughout the taxable year 1939 adjustment of the decedent's income tax liability for 1930 and 1931 was barred by the statute of limitations.

In his income tax return for 1939 the decedent did not report as income any portion of the recovery received from the National City Co. In the deficiency notice the respondent adjusted the amount of gross income reported by adding thereto and treating as ordinary gain the amount of $29,750.63 representing that portion of the net recovery which was attributable to the shares of stock sold by the decedent in 1930 and 1931. He did not add that portion of the recovery which was attributable to the 100 shares of stock which had not been disposed of by the decedent.

Petitioner contends that the suit brought by the decedent against the National City Co. was in the nature of an action for rescission of the original contract and that the amount recovered in 1939 is in the nature of a capital recovery which does not constitute taxable income in the absence of realization of gain, either actually or constructively, and that he realized no gain, since the deductions claimed in the years when the stock was sold did not result in any "tax benefits" to him. In the alternative, petitioner contends that, if the amount recovered is taxable to the decedent, it is taxable as capital gain. The respondent contends that the entire amount recovered by the decedent from the company is taxable as ordinary gain and that it is wholly immaterial whether he realized any "tax benefits" from the deductions taken in the prior years.

We think the record supports the petitioner's contention that the suit brought by the decedent was in the nature of an action for rescission of the original contract, as distinguished from an action for damages. In the complaint he prayed for a rescission of the entire transaction and the return of the purchase price of the stock, and he tendered the proceeds of the stock, or an equivalent number of shares of stock, plus interest and dividends received. Had the suit been disposed of in the regular procedure and resulted in a court order placing the parties in status quo, it would seem that the purchase price thus recovered by petitioner would represent a return of capital, rather than taxable income. But the suit was not disposed

of in that manner. It was settled by a stipulated compromise, the company paying an amount of money to the decedent. True, the decedent had already sold the stock in 1930 and 1931, but that fact does not require the conclusion that the transactions were completely closed at that time because the decedent still maintained his right of action against the company. Moreover, regarding the series of transactions as a whole, it is apparent that no gain was actually realized by the decedent. The purchase price which he paid for the stock is in excess of the proceeds realized from the sales in 1930 and 1931 plus the total net recovery in 1939. Therefore, it seems to us that the real question presented is whether the fact that the decedent sold the stock in 1930 and 1931 and claimed deduction in his returns for those years, for which he realized no tax benefits, requires us to hold that the amount recovered in 1939 constitutes taxable income, even though he realized no economic gain.

In *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, which case is strongly relied upon by the respondent, the taxpayer entered into a contract with the United States Government for dredging the Delaware River. In its income tax returns from 1913 to 1916 it added to gross income for each year the payments received under the contract and deducted its expenses paid in performing the contract. The total expenses exceeded the payments received and its returns for 1913, 1915, and 1916 showed net losses. Its return for 1914 showed net income. In 1915 work under the contract was abandoned and in 1916 the taxpayer brought suit to recover for a breach of warranty of the character of the material to be dredged. It obtained judgment in the Court of Claims, the court stating that the recovery was upon the contract and was "compensatory of the cost of the work, of which the government got the benefit." The recovery was received in 1920 and the Supreme Court held that it constituted gross income for that year despite the fact that in the prior years the taxpayer had suffered net losses in the conduct of its business which were in some measure attributable to expenditures made to produce the net income of the latter period. In so holding the Court pointed out that there was no statutory authority for disregarding the annual accounting periods to permit the bringing forward of losses sustained in the prior years to offset the taxable income received in a later year. The Court found, however, that the money received in the later year was in the nature of an income item, as distinguished from a non-income item such as a return of capital. On that point the Court said:

That the recovery by respondent in 1920 was gross income for that year within the meaning of these sections cannot, we think, be doubted. The money received was derived from a contract entered into in the course of respondent's business operations for profit. While it equalled, and in a loose sense was

a return of, expenditures made in performing the contract, still as the Board of Tax Appeals found, the expenditures were made in defraying the expenses incurred in the prosecution of the work under the contract for the purpose of earning profits. They were not capital investments, the cost of which, if converted, must first be restored from the proceeds before there is a capital gain taxable as income. See *Doyle* v. *Mitchell Brothers Co.*, *supra*, page 185 of 247 U. S. 38 S. Ct. 467.

In cases involving bad debts, which are similar to the instant case in that the original disbursement represents an outlay of capital, we have held that, where a bad debt deduction does not effect an offset of taxable income for the years deducted, then a recovery of the debt in a subsequent year should not be included in gross income in the year of recovery. *State-Planters Bank & Trust Co.*, 45 B. T. A. 630, and *National Bank of Commerce of Seattle*, 40 B. T. A. 72; affd., 115 Fed. (2d) 875. In the last case we also said that, where the amount previously deducted effects an offset of taxable income, the subsequent recovery should be included in taxable income. The reason behind the ruling is that by the prior deduction of the amount of the loss from taxable income the taxpayer has already had, for income tax purposes, a recoupment of the capital out of taxable income. Any further recovery is accordingly in the nature of a replacement of taxable income and, being in excess of the reduced cost of the capital asset, is equivalent to gain to the taxpayer. Affirming *National Bank of Commerce of Seattle*, the court stated the principle as follows:

* * * when * * * a loan becomes worthless, the amount thereof is loss of capital, but the income tax laws permit the bank to recoup its capital by deducting from the profits or income the amount of the loss. Thus the bank does not pay a tax on all its income, but on the amount of income less the loss on the worthless debt. The debt itself then loses its nature as capital, but represents that portion of the income which was not taxed, and the capital is the money taken from the profits or income. If the loan, after being deducted from income, is paid, then the lender is receiving profit or income—otherwise the lender would double its capital on one transaction. In other words the profits or income used to pay back the capital when the debt is charged off is represented by the worthless loan, so that when such loan is paid the profits are replaced.

Applying the rationale of that case to the facts in the instant case, we conclude that, since the deductions taken by the decedent in 1930 and 1931 did not effect an offset of taxable income, the recovery in 1939 must be treated as a return of capital rather than taxable income. This conclusion is in accord with the principle expressed in *Central Loan & Investment Co.*, 39 B. T. A. 981, and *Amsco-Wire Products Corporation*, 44 B. T. A. 717. The respondent's argument seems to be that those cases have been erroneously decided, but he cites no authority to the contrary. In fact, as pointed out in *Central Loan & Investment Co.*, *supra*, and *National Bank of Commerce of Seattle*,

*supra*, the conclusions reached therein are in accord with the views expressed by the General Counsel of the Bureau of Internal Revenue in G. C. M. 18525 (C. B. 1937–1, p. 80) and G. C. M. 20854 (C. B. 1939–1, p. 102). The rulings expressed therein were in effect during the taxable year, but have since been modified or revoked by G. C. M. 22163 (C. B. 1940–2, p. 76). Our conclusion here also seems to be in accord with the recent case of *Glenn* v. *Louisville Trust Co.*, 124 Fed. (2d) 48.

In view of our holding that the net recovery of $29,750.63 received by the decedent in 1939 does not constitute income, it is unnecessary to consider petitioner's alternative contention that if the recovery constitutes income it should be taxed as capital gain.

Petitioner concedes an affirmative issue raised in the respondent's amended answer relating to the deduction of certain business expenses.

*Decision will be entered under Rule 50.*