Estate of Harriet Ankeny Watson, E. A. Mallaghan, Administrator and Trustee, v. Commissioner. Estate of John D. Ankeny, Mary R. Ankeny and First National Bank of Walla Walla, Executors, v. Commissioner.
Estate of Watson v. Commissioner
Docket Nos. 110399, 111288.
United States Tax Court
1944 Tax Ct. Memo LEXIS 403; 3 T.C.M. (CCH) 8; T.C.M. (RIA) 44005; January 4, 1944
*403 Gross income: Definition: Bank stock assessment: Recovery of amount allowed in prior year without tax benefit. - A bank assessment paid and allowed as a deduction in a prior year without tax benefit constitutes a contribution to capital in the year of recovery and is not includible in the gross income for such year. John F. Watson, Esq., Thomas P. Gosc, Esq., 218 First Nat. Bank Bldg., Walla Walla, Wash., and Henry F. Moore, C.P.A., for the petitioners. Arthur L. Murray, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined deficiencies in income tax for the year 1940 as follows: Estate of Harriet Ankeny Watson, et al., docket No. 110399, $447.34; Estate of John D. Ankeny, et al., docket No. 111288, $9,896.51. The deficiencies are contested in part. The returns were filed with the collector for the district of Washington. The sole question is whether payments received in the taxable year from a liquidator of a national bank are taxable income. Findings of Fact E. A. Mallaghan is the duly appointed administrator of the estate of Harriet Ankeny Watson. (Docket No. 110399). The books of the estate are kept and its returns are *404 filed on the cash receipts and disbursements basis. Mary R. Ankeny and the First National Bank of Walla Walla are the duly appointed executors of the estate of John D. Ankeny. They were substituted as petitioners in the proceeding, (Docket No. 111288). John D. Ankeny, deceased, resided at Walla Walla, Washington. He kept his books and filed his returns on the cash receipts and disbursements basis. John D. Ankeny and Harriet Ankeny Watson were brother and sister. Their father, Levi Ankeny, died March 29, 1921. Originally, there were four beneficiaries of the Levi Ankeny estate: namely, John D. Ankeny, Nesmith Ankeny, Harriet A. Watson, and Robert M. Ankeny. Robert M. Ankeny died on June 7, 1927, and his one-fourth interest in the estate of Levi Ankeny was transferred to his estate. Harriet Ankeny Watson died on September 24, 1932, and her then undivided one-third interest in the assets of the Levi Ankeny estate was eliminated from the books of that estate and carried on the books of her estate. After September 24, 1932, the income of the Levi Ankeny estate was apportioned only to the two remaining beneficiaries of the estate. The estate of Levi Ankeny kept its books and filed its *405 returns on the cash receipts and disbursements basis. The First Inland National Bank of Pendleton, Oregon, was organized as a national banking association in October 1931. It had outstanding 4,000 shares of capital stock of the par value of $100 per share. During the period beginning October 19, 1931, and ending April 21, 1932, John D. Ankeny acquired 1,451 shares of the First Inland National Bank at a price of $125 per share. John D. Ankeny held 1,035 shares of this stock in his own name, and 416 shares were held by the estate of Levi Ankeny. John D. Ankeny and the estate of Harriet Ankeny Watson each had a one-fourth interest in the stock held by the estate of Levi Ankeny. On October 17, 1932, the First Inland National Bank was closed by proclamation of the mayor of the city of Pendleton and on March 22, 1933, the Comptroller of the Currency of the United States appointed a conservator to direct the affairs of the bank. On February 1, 1934, Charles Reynolds was appointed as receiver of the bank and he continued in that capacity until November 19, 1938. On or about July 10, 1934, the Comptroller of the Currency ordered the receiver to make an assessment of $100 a share on the *406 stockholders of the bank. The assessment was made in 1934, and John D. Ankeny paid the total assessment of $145,100 for himself and the estate as follows: $5,100 in 1934; $25,162.26 in 1935; and $114,837.74 in 1936. Of this amount John D. Ankeny paid $103,500 in connection with the 1,035 shares personally owned by him and $41,600 as trustee of the Levi Ankeny estate. Of the $41,600 paid by the Levi Ankeny estate, $10,400 was allocated to the estate of Harriet Ankeny Watson representing the assessment on her one-fourth interest in the 416 shares owned by the estate. In his individual return for the year 1935, John D. Ankeny deducted the sum of $17,948.26 as a part payment of the assessment in connection with the 1,035 shares of stock individually owned by him. His return for that year showed net income of $3,134.64. In his return for the year 1936, he deducted the sum of $74,780.90 as part payment of the assessment. His return for 1936 showed a net loss of $18,455.98. On the return of the estate of Levi Ankeny for the year 1935, the amount of $3,607 was deducted as part payment of the assessment. The net income of the estate for 1935 amounted to 5,322.03, one-half of which was distributed *407 to John D. Ankeny. On the return of the estate of Levi Ankeny for the year 1936, the sum of $16,461.92 was deducted as a part payment of the assessment. The return showed a net loss of $11,048.35, one-half of which was taken as a loss by John D. Ankeny in reporting his fiduciary income for that year. To summarize the facts: John D. Ankeny paid an assessment of $113,900 on the 1,139 shares owned by him and deducted the sum of $102,763.62 from his 1935 and 1936 returns. The tax benefit derived from the deduction of $102,763.62 was $84,307.64, computed as follows: Amount
Tax Benefit
Non-Tax
Year
Deducted
from Deduction
Benefit
1935
$ 19,751.76 [1]
$19,751.76
None
1936
83,011.86 [2]
64,555.88
$18,455.98
Total
$102,763.62
$84,307.64
*408 Of the amount of $113,900 paid on the assessment, John D. Ankeny did not claim as a deduction the sum of $11,136.38. In December 1940, the estate of Harriet Ankeny Watson and John D. Ankeny received distributions of $2,080 and $22,780, respectively, from the bank. These amounts were distributed pursuant to an order of the United States District Court for the District of Oregon, which, inter alia, ordered: "* * * that the Petitioner JOHN D. ANKENY, As Agent of the Shareholders of the First Inland National Bank of Pendieton, Oregon, be and he is hereby authorized to pay to each of the shareholders of said Bank 20% of the principal amount of the assessment paid by said Shareholder to the Receiver of said Association, * * *" No part of these distributions has been reported as taxable income. The distributions were treated by petitioners as a return of capital and credited against the cost of the stock. The cost of the stock has never been reported as a loss by petitioners or used as a deduction against taxes. Respondent added to the taxable income of the estate of Harriet A. Watson and of John D. Ankeny the amounts of the distributions received from the bank in 1940, to wit, *409 $2,080 and $22,780, respectively. The explanation given for determining that the distribution received by the estate of Harriet Ankeny Watson was taxable income was as follows: "(a) During the taxable year there was recovered $2,080.00 representing a part of your investment in the stock of First Inland National Bank of Pendleton, which stock was determined worthless in 1932, resulting in the elimination of your basis for income tax purposes. The amount recovered is held to be taxable income when received." The explanation given for determining that the distribution received by John D. Ankeny was taxable income was as follows: "* * * (b) During the taxable year there was recovered by you the sum of $22,780.00 representing a part of your investment in the stock of First Inland National Bank of Pendleton, Oregon, which stock was determined worthless in 1932. The cost of the stock was deductible for income tax purposes prior to 1940." Opinion In the petitions in these proceedings it has been alleged that the Commissioner erred in treating as taxable income the liquidating dividends received in the taxable year in the amounts of $2,080 and $22,780; that the bank stock in question *410 has not been treated by petitioners as having become worthless in 1932, no part of the costs of the stocks having been charged off on the books of the respective owners. In the petition of John D. Ankeny, later deceased, it is stated, further, that he has not at any time used as a deduction against income the sum of $18,455.98 of the total sum paid as double assessment, or had any tax benefit therefrom at any time. Respondent, in his answer, denied generally the above allegations and statements. At the hearing in these proceedings, petitioners' counsel stated that petitioners would attempt to prove that the bank stock in question did not become worthless in prior years and, also, that of the assessments made in 1936, there remains $18,455.98 for which John D. Ankeny has not received any tax benefit. In his brief, respondent appears to concede that there is the probability that petitioners have not received Federal income tax benefits for about 25 percent of the assessments which were paid; he states that the evidence shows "that the petitioners claimed, and received, Federal income tax benefits, for the years 1935 and 1936, for at least 75 percent of their total payments". However, *411 respondent contends that the bank stock must have become worthless in 1932 or else the assessments would not have been made; that the only justification for the taking and allowance of deductions in 1935 and 1936 for amounts paid under assessments, must have been that the payments represented losses in addition to the loss of the original investments in the bank stocks; that the bank stock was worthless during 1934, at the latest. From all of such contentions, respondent argues that "where a recovery is made on a loss sustained in a prior year, which loss was based upon expenditures for which income tax deductions were properly claimed and allowed as deductions during said prior year, the recovery is income for the year of receipt". Respondent does not contend that petitioners have ever taken and received deductions for losses of their investments in the bank stocks, themselves. Respondent does not devote any consideration in his brief to the contention of petitioner, John D. Ankeny, that he has never received a tax benefit for the amount of $18,455.98. Respondent, accordingly, has not answered in his brief part of petitioners' contentions which are based upon an issue raised by the *412 pleadings. Petitioners also contend, in their brief, that the refunds received in the taxable year represent a return of capital for which no tax benefits were received in previous years. Upon due consideration of the pleadings and the various arguments made by the parties in their respective briefs, it is our opinion that the broad question of whether the refunds represent taxable income to petitioners in the taxable year turns upon whether or not each petitioner has received tax benefits in prior years with respect to the payments of the assessments for part of which deductions were taken and allowed. For convenience, we will first consider the facts as to petitioner, John D. Ankeny: In 1934, John D. Ankeny owned 1,139 shares of the bank's capital stock. This comprised 1,035 shares held individually by him and a one-fourth interest in 416 shares held by the estate of Levi Ankeny. The parties have agreed, however, that for the purpose of this controversy, each petitioner shall be considered as owning 104 shares of the 416 shares held by the estate. In 1934, pursuant to the order of the Comptroller of the Currency, the receiver of the bank levied a 100 percent assessment on the *413 stockholders of the bank. Since the stock was of a par value of $100 per share, and John D. Ankeny owned 1,139 shares, he paid the sum of $113,900 to the receiver as his share of the assessment. Of this amount, he did not claim as a deduction in his returns, the sum of $11,136.38. In his 1935 and 1936 returns, he deducted and was allowed by respondent a total amount of $102,763.06 on account of the assessment, from which he received a tax benefit of $84,307.64. These amounts are not disputed by respondent. In 1940, he received the sum of $22,780, representing 20 percent of the $113,900 paid to the receiver. Petitioner argues that this amount cannot be considered as taxable income since there still remains from the original payment of $113,900 the sum of $29,592.36 [3] for which he received no tax benefit. He claims that the refund of $22,780, therefore, represents a return of capital. We think that contention is correct and that as no tax benefit has been received for such amount, it does not constitute taxable income. *414 Additional assessments levied upon stock of a corporation constitute an additional capital outlay by the stockholders in the acquisition of their stock. John G. Paxton, 7 B.T.A. 92. The payment of the assessment by petitioner was, therefore, a contribution to capital. Porter Property Trustees, Ltd., 42 B.T.A. 681; affd. on another point, 130 Fed. (2d) 276; W. R. Ranney, 16 B.T.A. 1399; affd., 46 Fed. (2d) 283. Petitioner, however, was allowed to recoup part of that capital by deductions in the years 1935 and 1936. However, that portion of the capital contribution which was not recouped, namely, the sum of $29,592.36, still remains as capital. Of this amount, the sum of $11,136.38 was not claimed as a deduction. Therefore, a repayment of the assessment which is attributable to this amount is not includible in gross income. See G.C.M. 22163, C.B. 1940-2, p. 76, 80. As to the remainder of $18,455.98, petitioner has received no tax benefit from the deduction in 1936. This Court has followed the rule that if the amount deducted in a *415 prior year did not effect an offset of taxable income for the year in which deducted, then the recovery in a subsequent year should not be included in gross income in the year of recovery. John V. Dobson, 46 B.T.A. 770; affd. 320 U.S. 489; Estate of James N. Collins, 46 B.T.A. 765; affd., 320 U.S. 489; Motor Products Corporation, 47 B.T.A. 983; Corn Exchange National Bank & Trust Co., 46 B.T.A. 1107; Citizens State Bank, 46 B.T.A. 964; National Bank of Commerce of Seattle, 40 B.T.A. 72; affd., on another issue, 115 Fed. (2d) 875; Philadelphia National Bank v. Rothensies, 43 Fed. Supp. 923; Western Adjustment and Inspection Co., 45 B.T.A. 721; Amsco-Wire Products Corporation, 44 B.T.A. 717; Central Loan & Investment Co., 39 B.T.A. 981. It is, therefore, held that the amount of $22,780 received *416 by petitioner John D. Ankeny in the year 1940 is not taxable income to him in that year. With respect to the estate of Harriet Ankeny Watson, there is a different situation. The fiduciary returns of the estate were not offered in evidence and petitioner has not proved that it did not receive a full tax benefit from the deductions in the prior years. Petitioner's share of the assessment levied on the 416 shares owned by the Levi Ankeny estate was $10,400. The record indicates that for the year 1936, petitioner deducted the sum of $8,230.96 on account of the assessment. However, petitioner did not prove that the balance of the assessment was not deducted in 1935. On brief, petitioner does not seriously contend that it did not receive a full tax benefit by deductions in previous years. It is, therefore, held that the sum of $2,080 received by the estate of Harriet Ankeny Watson in the year 1940 is taxable income to it in that year. There are other adjustments which are not contested by petitioners. Accordingly, Decisions will be entered under Rule 50. Footnotes
1. The sum of $19,751.76 is the total of the amount of the assessment which John D. Ankeny deducted on his own return for 1935, $17,948.26, and 1/2 of $3,607, assessment, which was deducted on the 1935 return of the estate of Levi Ankeny, or $1,803.50. ↩
2. The sum of $83,011.86 is the total of $74,780.90, the assessment deducted in the 1936 return of John D. Ankeny, and $8,230.96, 1/2 of $16,461.92 of assessment which was deducted in the 1936 return of the estate of Levi Ankeny.↩
3. The amount of $29,592.36 is the total of $18,455.98, the amount of loss deductions in 1936 on the returns of John D. Ankeny and the estate of Levi Ankeny, for which petitioner did not receive any tax benefit, and $11,136.38 of the total of $113,900 which was paid out in assessments for which no deductions were taken. The total sum is in excess of a figure of $23,555.98, to which petitioners refer in their brief. The discrepancy is immaterial in deciding the issue presented in these proceedings.↩