COMMISSIONER OF INTERNAL REVENUE

v.

The PENNROAD CORPORATION and Affiliated Companies.

No. 11569.

United States Court of Appeals Third Circuit.

Argued June 14, 1955.

Decided Dec. 12, 1955.

Frank E. A. Sander, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

William R. Spofford, Philadelphia, Pa. (Charles S. Jacobs, Robert R. Batt, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

The case at bar concerns the 1947 income tax of Pennroad Corporation and its affiliates. In 1929 The Pennsylvania Railroad Company caused the taxpayer, Pennroad, to be created so that it might do for Pennsylvania the things which Pennsylvania could not legally do for itself: the protection and extension of Pennsylvania's empire in the fiercely competitive field of railroad transportation. Pennsylvania caused Pennroad to invest its capital in stocks of railroad companies and, later, to embark on disastrous freight-forwarding ventures referred to generically hereinafter as "Freight Forwarding transactions."

The details of these investments and transactions are set out in full in the findings and opinions listed in the footnote [1] and need not be repeated here.

It is sufficient to state here that a stockholders' derivative suit (Perrine) was commenced against Pennsylvania on behalf of Pennroad in the Court of Chancery of Delaware, and two other similar suits (Overfield and Weigle, later consolidated for trial) were filed against Pennsylvania in the United States District Court for the Eastern District of Pennsylvania. A judgment of $22,104,515.92, based on three of Pennroad's eight railroad investments and the Freight Forwarding transactions, was obtained by Pennroad against Pennsylvania in the Weigle and Overfield suits. Recovery was had on proof that Pennroad, dominated by Pennsylvania, was compelled by it to invest in the stocks of railroad companies at exorbitant prices, and to conduct Freight Forwarding transactions to the great benefit of Pennsylvania and to the great loss of Pennroad. Recovery was based on the items and in the amounts set out in the footnote.[2]

The judgment was appealed to this court and was reversed, the majority ruling that a Pennsylvania statute of limitations barred Pennroad's recovery. The present writer dissented. Thereafter negotiations were commenced and all three suits were finally settled by Pennsylvania paying to Pennroad the sum of $15,000,000 on February 9, 1947. The net amount remaining to Pennroad after the payment of counsel fees and other expenses was $12,202,804.31, and this was credited on Pennroad's books to capital surplus.

In its 1947 tax return, Pennroad did not report any part of the settlement as income. Its unrecovered bases for the three railroad investments and the Freight Forwarding transactions, for which the District Court had allowed recovery, at the time of settlement were no less than the amounts listed below:

| | |
|---|---:|
| Boston & Maine Railroad Co. | $23,637,708.38 |
| Pittsburgh & West Virginia Railway Co. | 37,898,100.00 |
| Seaboard Air Line Railway Co. | 3,312,179.40 |
| Freight Forwarding transactions | 1,532,460.30 |
| Total | $66,380,448.08 |

The Commissioner assessed a deficiency. As stated in his brief, he "first deducted from the $15,000,000 settlement proceeds $2,939,190.27 of various expenses and fees which had been incurred as a result of the litigation, and then allocated the balance to the various items for which the United States District

1. See the opinion of the Tax Court, 1954, 21 T.C. 1087; that of the Supreme Court of Delaware, Perrine v. Pennroad Corp., 1946, 29 Del.Ch. 531, 47 A.2d 479, certiorari denied, 1947, 329 U.S. 808, 67 S. Ct. 620, 91 L.Ed. 690, and that of the Court of Chancery of Delaware, 1945, 28 Del.Ch. 342, 43 A.2d 721, relating to the settlement; the opinions of the United States District Court for the Eastern District of Pennsylvania granting the judgment referred to at a later point in this opinion, Overfield v. Pennroad Corp., 1941, 42 F.Supp. 586 and 1943, 48 F.Supp. 1008; and the majority opinion in this court reversing the judgment, and the dissenting opinion, 3 Cir., 1944, 146 F.2d 889, 901.

2. As follows:

"Reimbursement for damages arising out of purchase of shares of stock of Pittsburgh & West Virginia Railway Company... $ 9,140,130.00

Reimbursement for damages arising out of purchase of shares of stock of Seaboard Air Line Railway Company ... $ 4,450,152.04

Reimbursement for damages arising out of purchase of shares of stock of Boston & Maine Railroad..... 1,271,983.88

*Reimbursement for damages arising out of investment in National Freight Company and National Carloading Corporation ... 3,852,000.00

*Profits resulting to The Pennsylvania Railroad Company from transactions of National Freight Company and National Carloading Corporation with The Pennsylvania Railway Company ... 3,390,250.00

*[Freight Forwarding transactions]

$22,104,515.92"

Court had awarded recovery, and in the same proportions as it had, as follows:

Pittsburgh & West Virginia Railway
   Company ............................ $ 4,987,097.17
Seaboard Air Line Railway Company.. 2,428,120.90
Boston and Maine Railroad.............. 694,028.12
*National Freight Company............ 2,101,753.29
*Profits derived by Pennsylvania from
   National Freight Company busi-
   ness ................................... 1,849,810.25
    *[Freight Forwarding transactions]
                Total........ $12,060,809.73"

The Boston & Maine and Pittsburgh & West Virginia settlement proceeds as allocated by the Commissioner were held non-taxable by him since the amounts recovered were less than the bases of these investments. In respect to the Freight Forwarding investment · the Commissioner concluded that Pennroad had derived income of $569,292.99. The Commissioner determined that Pennroad's original basis in this investment was $3,852,000, the net amount which Pennsylvania caused Pennroad to invest in Freight Forwarding transactions. He also concluded that this basis must be adjusted by $2,319,539.70 of Freight Forwarding transactions losses during the years 1930 to 1933, which, allegedly, as a result of the filing of consolidated returns, had reduced or eliminated altogether the taxable income of Pennroad in those years. With respect to the $1,849,-810.25 attributable to profits which Pennsylvania had made on the Freight Forwarding transactions, the Commissioner concluded that this amount was taxable to Pennroad in its entirety. The Commissioner also assessed a deficiency on the Seaboard Air Line investment but abandoned this asserted deficiency in the proceedings before the Tax Court.

The Tax Court held, 21 T.C. 1087, all sixteen judges concurring, that since the total amount of the settlement was sub-stantially less than the total loss sustained by Pennroad as a result of Pennsylvania's domination and control which had caused Pennroad's disastrous investment policy, the total proceeds of the settlement should be tax exempt. The court concluded that although the losses arose from different investments and transactions, nonetheless they should be viewed as a unit because "[t]he basic nature of the claim lay in losses arising from a series of Pennsylvania's acts in furtherance of a continuing conspiracy," the consummation of the deft plan whereby Pennroad's assets were subjected to Pennsylvania's uses for Pennsylvania's benefit. The court pointed out that Pennroad's unrecovered capital losses, even restricting these to the very four investments which the District Court had used as a basis for recovery, were "many times" the sum of $15,000,-000 received by way of the settlement. The court stated: "Under the circumstances present in the instant case, we think that to apply to the settlement the allocation set forth in a vacated [sic 3] judgment covering only one of the [three] suits involved and adopting an unusual measure of liability would be arbitrary and unreasonable," citing, inter alia, Doyle v. Mitchell Bros. Co., 1918, 247 U.S. 179, 185, 38 S.Ct. 467, 62 L.Ed. 1054, Drier v. Helvering, 1934, 63 App.D.C. 283, 72 F.2d 76, and Lucas v. American Code Co., 1930, 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538.

We agree. The amount which Pennroad received from the settlement was indeed far less than the capital loss which it sustained from Pennsylvania's illegal conduct. The capital which Pennroad lost was not restored by the settlement.[4] As was said in Doyle v.

---

3. The judgment was reversed, not vacated.

4. The Tax Court stated, 21 T.C. at pages 1097–1098: "We have found as a fact that although * * * [Pennroad] at the time of settlement still retained the majority of the securities in question with a remaining cost in excess of $93,000,-000, it had sustained actual losses of $22,250,033.81 on the disposition of the balance of the securities, plus an actual net loss of $3,852,000 on the investment in National Freight [Forwarding] Company. The record leaves no doubt that as to those securities [Boston & Maine Railroad, Canton Company of Baltimore, and Pittsburgh & West Virginia Railway Company] retained by * * * [Pennroad] losses running to many millions of

Mitchell Bros. Co., 1918, 247 U.S. 179, 185, 38 S.Ct. 467, 469: "In order to determine whether there has been gain or loss, and the amount of the gain if any, we must withdraw from the gross proceeds an amount sufficient to restore the capital value that existed at the commencement of the period under consideration."

 We are at a loss to understand how the result of continuous conduct pursuant to a preconceived and deliberate plan giving rise to an enormous capital loss to the taxpayer, even though embracing a number of individual transactions and extending over a period of years, can be segmented by the Commissioner by allocations of a sum received by way of settlement until the capital of the taxpayer be restored. The law regards substance and not form. Lucas v. American Code Co., supra. Whether or not Pennsylvania's course of conduct toward Pennroad, resulting in the loss, was unitary and pursuant to a deliberate and single plan whereby Pennsylvania was to benefit at Pennroad's expense was a question of fact for the Tax Court and its findings in this regard are supported by the overwhelming weight of the evidence.

We hold that, under the circumstances at bar, Pennroad was entitled to the restoration of its capital before the principle of allocation could become applicable. Drier v. Helvering,[5] supra. To hold to the contrary in the instant case is to treat loss as gain. Reality forbids the imposition of tax in the instant case.

dollars had been suffered and we think it significant that in 1938 * * * [Pennroad] reduced the ledger value of [the] 3 * * * securities still held by * * * [it] by nearly $63,000,000."

An examination of the record demonstrates the accuracy of these statements and conclusions of the Tax Court.

5. In Drier v. Helvering, the award, made by the mixed claims commission, was expressly made in terms of both principal and interest. The United States Circuit Court of Appeals for the District of

In view of our conclusion it is unnecessary to pass upon the other contentions raised by the parties.

The decision of the Tax Court will be affirmed.

Columbia properly concluded that since the sum received was not sufficient to restore capital value, there was no taxable income. It is true that there was a single act of seizure by the German Government, whereas Pennsylvania in the case at bar employed a series of acts pursuant to a plan, to Pennroad's detriment. But in our opinion this distinction does not help the Commissioner's position in view of the unitary nature of Pennsylvania's employment of Pennroad's assets for its own benefit.