**MADISON FUND, INC. (Formerly The Pennroad Corporation), Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE (two cases).**

**Nos. 15589, 15590.**

United States Court of Appeals
Third Circuit.

Argued April 18, 1966.

Reargued June 10, 1966.

Decided July 26, 1966.

Rehearing Denied Aug. 24, 1966.

---

Charles S. Jacobs, Philadelphia, Pa. (William R. Spofford, Robert E. McQuiston, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for petitioner.

Albert J. Beveridge, III, Atty., Dept. of Justice, Tax Div., Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before STALEY, Chief Judge, and McLAUGHLIN, KALODNER, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

The petitioning taxpayer, Madison Fund, Inc.,—formerly The Pennroad Corporation—is contesting Tax Court decisions, 43 T.C. 215, determining deficiencies in its income tax for the taxable years 1956, 1958 and 1960. The matter in dispute is the computation of gain or loss upon the taxpayer's sales of securities from time to time between 1952 and 1960.[1] More specifically, the question is whether the basis of each security thus sold should be reduced and, if so, how much, by reason of the taxpayer's receipt from the Pennsylvania Railroad in 1947 of the net amount of approximately $12 million in settlement of certain stockholders' derivative suits.

The claims thus settled in 1947 were based upon the conduct of the Pennsylvania Railroad in causing the taxpayer, which Pennsylvania controlled, to make a number of specified disastrous investments of its assets which were calculated to serve the interests of Pennsylvania at the taxpayer's expense. Among the detrimental transactions alleged were the purchases at inflated prices of the various securities, subsequently sold between 1952 and 1960, which are involved in this case. The present dispute arises because, in computing gain or loss on each of these sales, the Tax Court determined the taxpayer's adjusted basis for the securities by subtracting from their cost that part of the 1947 settlement which the court found to represent a partial restoration of the capital invested therein.

On its face this appears to be a normal and proper way of determining gain or loss on the sale of property. For ordinarily a recoupment or recovery of part of the cost of property is an event that most obviously calls for a reduction of original cost basis in determining what gain or loss is subsequently realized on sale. Cf. Henri Chouteau, 1931, 22 B.T.A. 850; Estate of Collins, 1942, 46 B.T.A. 765, upheld in Dobson v. Commissioner of Internal Revenue, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. Indeed, such is the plain requirement of the Internal Revenue Code. 26 U.S.C. §§ 1001, 1011, 1012, 1016.

In this case neither party doubts that in legal contemplation the 1947 settlement constituted a partial restoration of capital which had been dissipated as a result of Pennsylvania's wrongdoing. Indeed, we so ruled in 1955 when we decided that the proceeds of the 1947 settlement were not income. Commissioner of Internal Revenue v. Pennroad Corp., 3 Cir., 228 F.2d 329. However, the taxpayer argues that the circumstances of this case and the language of our 1955 *Pennroad* decision preclude any allocation of the $12 million recovery now to accomplish a downward adjustment of cost basis in the computation of gain or loss on sales of securities covered by the 1947 settlement.

When we considered certain tax consequences of the 1947 settlement in the *Pennroad* case, the question presented and decided was whether part of that settlement had constituted the realiza-

1. Losses on sales which occurred before 1956 are in issue because of claimed capital loss carry-over to 1956.

tion of taxable income in that year. The Commissioner had allocated the total amount of the settlement among only a few of the capital expenditures involved in the settled suits, with the result that the settlement appeared to yield some taxable income. The Tax Court and this court concluded that this was error. We pointed out that dissipation of the taxpayer's capital as a result of wrongs redressed by the 1947 settlement far exceeded the $12 million recovery. Therefore, the effect of the Commissioner's allocation was as we said, "to treat [a mere reduction of] loss as gain". Technically, a properly inclusive allocation would not have been error, but it would not have provided any support for the Commissioner's position because it would not have shown any gain. In brief, a proper allocation would have been pointless for the purposes of that case. And so we ruled "that, under the circumstances [then] at bar, Pennroad was entitled to the restoration of its capital before the principle of allocation could become applicable." 228 F.2d 332. Therefore, neither our ruling, nor our language read in its context, in any way precluded an allocation of the lump sum settlement in the present case for the quite proper and useful purpose of realistically taking this partial restoration of the cost of property into account in determining gain or loss on future sales of that property.

It remains to consider the taxpayer's contention that in the circumstances of this case a fair and rational allocation of the $12 million settlement among various assets has not been made and cannot be made. The opinion of the Tax Court sets out at length both the mechanics and the justification of the allocation made of the lump sum capital recovery among various assets. Finding nothing speculative, illogical or unfair in this analysis or in its results, we shall sustain the challenged allocation.

The decisions will be affirmed.

STALEY, Chief Judge (dissenting).

I respectfully dissent from the holding of the majority opinion. The disposition of this appeal revolves about the construction we give to the language of our earlier opinion in Commissioner of Internal Revenue v. Pennroad Corp., 228 F.2d 329 (C.A.3, 1955). The majority is content to state that "a proper allocation would have been pointless for the purposes of that case" and "neither our ruling, nor our language read in its context, in any way precluded an allocation of the lump sum settlement in the present case * * *."

With this I cannot agree. In Pennroad we held that "under the circumstances at bar, Pennroad was entitled to the restoration of its capital before the principle of allocation could become applicable." 228 F.2d at 332. Insofar as I am concerned, this is the law of the case, and it should remain undisturbed unless there is a clear instance of previous error from which injustice may result. See White v. Higgens, 116 F.2d 312, 317 (C.A.1, 1940).

There has been no showing that the entire settlement was used for the restoration of capital, as our previous opinion requires, before there may be an allocation. Nor has there been any showing that our opinion in Pennroad is clearly erroneous or that injustice may result. The majority merely states that it finds nothing speculative, illogical or unfair in the allocation.

I would remand these cases to the Tax Court for a determination not inconsistent with our earlier opinion as we now construe it.

SUR PETITION FOR REHEARING

PER CURIAM:

The taxpayer's petition for rehearing has not persuaded a majority of the court that our decision affirming the Tax Court should be reconsidered.

Accordingly, the petition is denied.