**CALIFORNIA & HAWAIIAN SUGAR RE-FINING CORPORATION, Limited, v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 11488, 11489.

Circuit Court of Appeals, Ninth Circuit.

Aug. 25, 1947.

---

[21] See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

532

Henry J. Richardson, of Washington, D. C., and Walter C. Fox, Jr., of San Francisco, Cal., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., and Sewall Key, Lee A. Jackson, and Fred E. Youngman, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner is a so-called California cooperative marketing association organized under the California Agricultural Code, hereinafter called the cooperative. The members of the cooperative are thirty producers of raw sugar in the Hawaiian Islands, who transferred title of their sugar to the cooperative for processing and sale under a contract hereafter considered. The contract was made long before the enactment of the processing tax here considered and the case presents no question of tax avoidance.

The cooperative seeks a review of decisions of the Tax Court granting motions to dismiss the cooperative's proceeding for a refund of processing taxes, imposed by the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq., and held invalid in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. One sought refund of taxes upon the processing of raw sugar transferred to it by the contract and the other a refund of such taxes on processing jute bought from other persons and made into bags to contain the refined sugar. The Tax Court held that the petitions before it showed on their faces that the cooperative was not entitled to a refund on either the tax on the processing of the sugar or the jute. Since the underlying principles controlling the reviews here are identical, this opinion disposes of both.

There is no question that the moneys sought to be recovered were illegally taken by the government and in good faith should not be retained by it. Congress in discharging the moral obligation to refund the illegal collection permitted suits against the sovereign by the processor who paid it if the processor is one who in legal contemplation bore the burden of the tax. If, however, the processor has not had the burden of the tax or has transferred it to another person or persons, the right to sue the sovereign is given to the persons upon whom the burden was actually inflicted. The statute controlling the contention here discussed is Revenue Act 1936, Sec. 902(a), 26 U.S.C.A. Int.Rev. Acts, page 960:

"§ 902. Conditions on Allowance of Refunds * * *

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; * * *"

The Tax Court held that by the terms of the contract of sale from its members to the cooperative, set forth in the claim to the Commissioner and in the petition, both the sugar and jute processing taxes were not inflicted upon the cooperative but the burden assumed by the selling members by

an agreed reduction in the amount of such taxes from the price of the raw sugar paid them by the cooperative.

The Tax Court's opinion shows no consideration of the law of California for its marketing cooperatives,[1] under which several relationships may be created between the cooperative and its members as to the capacity in which it may hold and deal with the raw sugar to which title is transferred by the member owners. Under that law may be created such relationship as is desired.[2]

It is obvious that such holding and disposition may be in one of at least three capacities: (a) As an ordinary purchaser by an ordinary sale; (b) as agent holding the title and processing and selling as such agent for its principals the member transferors; and (c) as trustee of the raw sugar, the corpus of the trust, the proceeds of which, after refinement and sale, it holds in trust for the transferring members as beneficiaries.

On these questions of California law the briefs of both parties agree that the instant relationship between the members and the cooperative is not that of principals and agent. The cooperative it is there agreed is not a mere agent processing a "customer's" raw sugar for a fee under Sec. 913(a) of the Act of June 22, 1936, 7 U.S.C. 655, 7 U.S.C.A. § 655.

The cooperative claims that the Tax Court erred in its holding that the instant contract of sale was an ordinary contract in which the seller members assumed the taxes in the deduction of their amounts from the sales price paid them. That holding is stated in the Tax Court's opinion, as follows:

"Petitioner argues that the relationship between this corporation and its co-operative producers is similar to the relationship between a partnership and its partners, between a trustee and his beneficiaries or a corporation and its stockholders. It contends that the passing of the burden of the processing tax back to the cooperative producer in this case is identical to the transferring of such a burden from a partnership to its members, from a trustee to his beneficiaries or from a corporation to its stockholders, and that if petitioner is not permitted to recover in this case, logically no one but an individual processor should ever recover.

"Unfortunately for petitioner's position section 902 of the Revenue Act of 1936 as amended does not, by its terms, prohibit a corporation, trustee, or partnership processor from recovering processing taxes because the tax was indirectly paid by the stockholders, beneficiaries or partners, respectively. It does, however, specifically interdict the repayment of the processing

---

[1] In view of the absence of any consideration of, much less discussion, by the Tax Court upon the provisions of the California cooperative law controlling the relationship of the parties, we cannot agree with the Commissioner that the case in this respect is one within the principle of Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248.

[2] § 1194(a) and (h) of the California Agricultural Code reads:

"§ 1194. Powers of association. Each association incorporated under this chapter may:

"(a) [Activities that may be engaged in.] Engage in any activity in connection with the marketing, selling, preserving, harvesting, drying, processing, manufacturing, canning, packing, grading, storing, handling or utilization of any products produced or delivered to it by its members; or the manufacturing or marketing of the by-products thereof; or any activity in connection with the purchase, hiring, or use by its members of supplies, machinery or equipment, or in the financing of any such activities; or in any one or more of the activities specified in this section. * * *

"(h) [Other things necessary, suitable or proper.] Do each and every thing necessary, suitable or proper for the accomplishment of any one of the purposes or the attainment of any one or more of the objects herein enumerated; or conducive to or expedient for the interest or benefit of the association; and contract accordingly; and in addition exercise and possess all powers, rights and privileges necessary or incidental to the purposes for which the association is organized or to the activities in which it is engaged; and, in addition, any other rights, powers and privileges granted by the laws of this State to ordinary corporations, except such as are inconsistent with the express provisions of this chapter; and do any such thing anywhere."

tax to processors who have shifted the processing tax burden 'through reduction of the price paid for any such commodity.' There is no contention in this case but that petitioner, before it paid for its raw sugar supplies to the producers thereof, deducted the amount of the processing tax from the price which it paid therefor."

The contract here was made under Section 1208 of the California Agricultural Code providing for agreements over a period not exceeding fifteen years between the cooperative and its members for their sale to it of all or part of the commodity involved. In such a case, unless the contract otherwise provides, the title passes "absolutely" to the cooperative.[3] There was no such limiting provision in the contract and such title was transferred to the cooperative.

In the case of Bogardus v. Santa Ana Walnut Growers Ass'n, 41 Cal.App.2d 939, 108 P.2d 52, the members of that California cooperative, under a continuing marketing contract, sold it their walnuts to be processed and "resold" as in the instant case. The Santa Ana association was a local branch of a central association to which the local in turn sold the processed walnuts for resale to the trade. The local was about to distribute the proceeds it received from the central association to its members supplying the walnuts when a suit was brought to enjoin such distribution. The plaintiff claimed the right to enjoin on the ground contended by the Commissioner here, that the sale of the walnuts was an ordinary sale and hence that the local cooperative was entitled to

keep the proceeds as its corporate property.

The California district court of appeal affirmed a dismissal of the injunction suit. It decided that the contract made the local a trustee for the members transferring the walnuts to it. The net proceeds of the processing and resale it held is an incident of the trust created when it received the walnuts, stating (41 Cal.App.2d at pages 949, 950, 108 P.2d at page 58), "We are therefore convinced that if the money here in controversy was a trust fund while it was in the hands of the central association, then it clearly is a trust fund while in the hands of the local association and that each member who contributed to that fund is entitled to receive his pro rata share thereof. * * *"

The California court precedes this holding with the statement:

"It is respondents' contention, with which we agree, that at all times the relationship between the grower member and the local association, and between the local association and the central association, was that of principal and agent, or beneficiary and trustee; that a fiduciary relationship existed which required at all times that these associations account to the grower member for all proceeds received from the sale of walnuts, and required the grower member to bear his proportionate share of all losses sustained in the marketing and sale of walnut products. In support of this contention Texas Certified Cottonseed Breeders' Ass'n v. Aldridge, 122 Tex. 464, 61 S.W.2d 79, and Rhodes v. Little Falls Dairy Co., Inc.,

3 "§ 1208. Marketing contracts: Execution authorized: Passage of title to products: Provisions for sale of products, etc. The association and its members may make and execute marketing contracts, requiring the members to sell, for any period of time, not over fifteen years, all or any specified part of their products or specified commodities exclusively to or through the association, or any facilities to be created by the association. If they contract a sale to the association, it shall be conclusively held that title to the products passes absolutely and unreservedly, except for recorded liens, to the association upon de-

livery; or at any other specified time if expressly and definitely agreed in the said contract. The contract may provide that the association may sell or resell the products delivered by its members, with or without taking title thereto; and pay over to its members, the resale price, after deducting all necessary selling, overhead and other costs and expenses, including interest on preferred stock, not exceeding eight per cent per annum, and reserves for retiring the stock, if any; and other proper reserves; and interest not exceeding eight per cent per annum upon common stock."

230 App.Div. 571, 245 N.Y.S. 432, are cited. Both of these cases involved actions between a member of a nonprofit cooperative marketing association and said association for an accounting, and for the determination of rights involving proceeds received from sales of marketed products. In each of these two cases marketing contracts had been entered into between the purchaser and association, which contracts provided for the immediate passage of title and were otherwise couched in terms of outright purchase and sale. *In each of the cases cited the court held that the provisions for passage of title, and the terms of purchase and sale, were merely for convenience in marketing operations, and that the real relationship between the parties was one of trust, or of a fiduciary character.* Appellants cite several cases which reach a contrary conclusion and hold that the contracts under consideration were agreements for outright sale and purchase and that no fiduciary relationship existed. * * * [Citing cases.]"

■ It thus appears that under the California law the relationship created by the contract in the "passage of title, and the terms of purchase and sale,"—that is from the very beginning—is that of a trust, with the members as settlors creating a trust estate for themselves as beneficiaries.

The continuing walnut contract in the Borgardus case, like the raw sugar contract here, provided for the deduction of the costs and expenses of processing and sale, as here was deducted the expense of the processing taxes. We are unable to distinguish the two cases. By the so-called contract of sale this sugar cooperative is made a trustee by the members as settlors. The provision for the deduction of expenses in the trust instrument is not the "reduction of the price paid for any such commodity" as provided in Section 902, supra, but an expense of the trust administration.

By such manner the settlors create the status of the trustee just as the stockholders in articles of incorporation create the corporate entity, or as the partners in their agreement create the partnership entity. Like the agreement here, the stockholders' subscription agreement is frequently for successive installments. It can no more be said that the trustee transfers the burden of his tax in the reduced amount distributed to his beneficiaries, than does the corporation in a distribution of net earnings after deducting such tax transfer its burden to the stockholders who created it.

■ Such an interpretation is not an anomaly. The facts proved may make a mortgage of a deed absolute. Here the law of the state, necessarily a part of the agreement, makes it a trust instrument. Under that law an instrument may be construed as creating a trust though it expressly states it is not so to be construed. Eggert v. Pacific States S. & L. Co., 57 Cal.App.2d 239, 242, 136 P.2d 822; Neel v. Barnard, 24 Cal.2d 406, 411, 150 P.2d 177.

Such being the relationship, the Tax Court erred in holding that the cooperative was relieved of the burden of the processing tax by virtue of its contract with its members. The solution here determined we think is in accord with the Congressional intent. It provides no unjust enrichment to the cooperative which must return to its members the recovered amount of the illegal tax, if it has not otherwise transferred its burden.

■ The Commissioner contends also that the cooperative has not stated in its claims that it relied upon this condition of the California law and therefore no sufficient claims are filed. We do not agree. The claims are on the forms provided by the Commissioner. They stated the amounts of the taxes it had paid and that it had not been relieved thereof through "reduction of the price paid for any such commodity." It attached its contract into which is imported the laws of California. No more is necessary. Claimant is not required to go on and state what the California law makes the transaction. The commissioner is charged with such knowledge.

■ The question remains whether the trustee cooperative has maintained its burden of proof that it did not transfer the

burden of the taxes to its vendees of the processed sugar. On this issue it filed with its claims elaborate statements of the average margins in its sales of sugar in the periods before, during and after the illegal imposition of the tax and the calculation therefrom of the tax refunds due. The Commissioner contends that the marginal statements are insufficient to comply with his requirements for refund claims, a condition precedent to recovery. This contention raises a justiciable question.

The Tax Court's ground of decision did not require a consideration of this contention. It is one peculiarly within the competence of the Tax Court and there should be determined in the first instance. Cf. Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248. We therefore refrain from deciding more than the above incident of the law of California and continue the cases for further consideration and decision by the Tax Court on the claimed rights to a refund. The orders dismissing the petitions are set aside and the cases remanded to the Tax Court for such consideration.