UNITED STATES of America, Appellant,

v.

ST. JOE PAPER COMPANY, Appellee.

No. 18425.

United States Court of Appeals
Fifth Circuit.

Dec. 12, 1960.

David O. Walters, Lee A. Jackson and Meyer Rothwacks, Attys., Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., John L. Briggs, Asst. U. S. Atty., Jacksonville, Fla., E. Coleman Madsen, U. S. Atty., Miami, Fla., for appellant.

John S. Nolan, Charles T. Akre, Washington, D. C., Robert N. Miller, Miller &

Chevalier, Washington, D. C., of counsel, for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

The United States appeals from a judgment of the District Court allowing as a deduction from income tax attorneys' fees paid by appellee in its long struggle over the equity ownership of the Florida East Coast Railway Company. The basic facts upon which a correct determination of this question must depend are not in dispute. Nor are the legal principles which must apply. The appellant contends that the trial court drew the wrong conclusion from the undisputed facts. We are constrained to agree.

The Railway was placed in receivership in 1931. This receivership was "extraordinarily successful" in that it maintained the railroad in operation, improved it physically and also accumulated substantial cash. It also provided for payment of all current interest on the $12,000,000 first mortgage bonds. There was a default in the interest on the $45,000,000 5% first and refunding bonds. In 1941 a committee representing holders of the first and refunding bonds filed a plan of reorganization with the Interstate Commerce Commission. Under this plan holders of this series of bonds would receive new bonds and all of the stock of the reorganized company in lieu of their present defaulted bonds. Thereafter appellee's predecessor corporation and trustees of the Alfred I. duPont Estate, who owned and controlled such corporation and also owned and controlled appellee, acquired $3,500,000 of the first and refunding bonds. They then filed a plan of reorganization which also provided for the issuance of new capital stock, of which the duPont trustees would be entitled to a majority. The Commission approved a plan which in substance was that of the committee. During the consideration of the plans by the Commission, and after its approval of the plan which did place all of the re-organized company's stock in the hands of holders of its first and refunding bonds, St. Joe Paper Company, and its predecessor, and the duPont trustees acquired an additional $19,759,000 of the bonds.

It is clear from the entire history of the proceedings, and it was in fact conceded on oral argument in this Court, that these bonds were acquired by St. Joe Paper Company and its associated interests for the purpose of acquiring the equity or stock ownership of the railway company. The holdings of St. Joe ultimately totalled $25,000,000 in bonds acquired at a total cost of approximately $2,500,000. The Commission's first plan was disapproved by the District Court because no satisfactory disposition had been made of a large accumulation of cash. The plan was, therefore, returned to the Commission for further consideration. It is amply clear that in this posture of affairs St. Joe Paper Company had every hope and expectation that it would acquire ownership of the railway. Touching on this matter the Interstate Commerce Commission found:

"The St. Joe Paper Company owns about 56 percent of the $45,000,000 principal amount of the debtor's outstanding first and refunding mortgage bonds, *which it acquired to that extent for the avowed purpose of obtaining control of the debtor's line of railroad upon its reorganization.*" (Emphasis added.)

With the matter back again before the Commission, a long struggle began. At the suggestion of a group of other bond holders the Commission reversed its previous position and held that the public interest required that St. Joe Paper Company be denied the right to own the equity interest and thus the operating control of the railway. Instead it approved a plan that would have merged the Florida East Coast Railway with the Atlantic Coast Line Railroad and substituted securities of the Coast Line for the first and refunding bonds of the Florida East Coast. The long litigation proceeded before the Commission, the

District Court, the Court of Appeals, then the Commission, the District Court, the Court of Appeals, the Supreme Court, and again back to the Commission, until it was finally terminated following a stipulation between the railroad companies in favor of a plan which yielded to St. Joe Paper Company the stock ownership which it had sought from the beginning. The lawyers' fees spent by St. Joe in 1944, 1945, 1946 and 1947, in carrying on this protracted struggle, are claimed by the taxpayer to be deductible as ordinary and necessary business expenses, I.R.C.1939, § 23(a) (1) (A), 26 U.S.C.A. § 23(a). The Government says they are capital expenditures made in connection with the acquisition of property and are thus not deductible.

This Court has held that "all sums expended toward the acquisition, protection, or preservation of title to property from or by means of which income is intended to be produced are capital expenditures." Jones' Estate v. C. I. R., 5 Cir., 127 F.2d 231, 232. In a later case, Campbell v. Fields, 5 Cir., 229 F.2d 197, we distinguished the facts there (attorneys' fees in connection with unitizing separate oil leases) from those of the Jones' Estate case by saying:

> "Here the controverted deductions were not made for acquiring property or defending title to property, nor for the purpose of converting one kind of property into some different kind of property. Here the expenses were incurred in order that the taxpayers might realize and enjoy the income from the property." 229 F.2d 197, 203.

In the case before us the appellee says it is in the same position as was the taxpayer in Alleghany Corporation, 28 T.C. 298, in which decision the Commissioner acquiesced. 1957–2 Cum.Bul. 3. All St. Joe was doing here, says the taxpayer, was "trying to retain its interest in the Railway—the equity ownership interest it had acquired in 1941–1943." The fallacy of this argument is that the major premise upon which it rests is not true. Appellant did not own an equity

interest in the Railway in 1941–1943. It owned nothing until it embarked upon a program of acquiring the stock of the Florida East Coast Railway Company. In order to do so it acquired first and refunding bonds. To be sure at the time it acquired the bonds there was a strong hope, indeed a likelihood, that the Commission's then outstanding plan or such plan with minor modifications, would ultimately be approved by the courts. This does not change the fact that what appellee actually did was to buy into a lawsuit, which, if successfully prosecuted to a conclusion, would yield it property quite different from that which it bought in the first instance. The fact that it did succeed is not evidence of its success in "retaining" or "protecting" its investment, but it is rather evidence of its success in acquiring a new investment. The legal fees necessarily paid by it in such acquisition are capital expenditures.

The judgment of the trial court is reversed and the case remanded for the entry of a judgment in favor of the defendant.