**CALIFORNIA AND HAWAIIAN SUGAR REFINING CORPORATION,**
**Limited**
v.
**The UNITED STATES.**
No. 287–59

United States Court of Claims.
Dec. 5, 1962.

Jones, C. J., and Whitaker, J., dissented in part.

Marion B. Plant, San Francisco, Cal., for plaintiff.

Warren R. Wise, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith and Philip R. Miller, Washington, D. C., were on the brief.

. . . . . .

DAVIS, Judge.

The California and Hawaiian Sugar Refining Corporation sues for a refund of income taxes and interest which it was required to pay for 1953. In the view we take, the case involves two separate but related issues. The first is whether processing and floor stock taxes paid by the plaintiff in 1934 and 1935 under the Agricultural Adjustment Act of 1933, and refunded to it in 1953 after the invalidation of that statute, are a return of capital or taxable income. The second issue relates to the deductibility of legal and expert-witness fees incurred in securing the refunds.

Plaintiff is, and has been for approximately 30 years, an agricultural marketing cooperative engaged in refining and marketing the sugar of its patrons, who are Hawaiian sugar cane growers. Until January 1, 1952, plaintiff was exempt from federal income taxation under the laws then in effect. For taxable years beginning on or after that date, plaintiff and other cooperatives similarly situated became subject to the qualified system of federal income taxation established by Section 101(12) of the Internal Revenue Code of 1939, as amended, to the extent they retained unallocated income earned during the tax year. Under that section an "exempt" cooperative is taxed on its income, whether or not derived from patronage, except that the cooperative is allowed deductions from gross income for amounts paid during the year as dividends upon its capital stock, and for amounts paid or allocated to patrons. The cooperative must include in its taxable income both patronage income and income not derived from patronage which it retains and does not allocate to the accounts of its patrons.

During 1934 and 1935, while it was exempt from all federal income taxes, the plaintiff paid the processing taxes and floor stock taxes imposed by the Agricultural Adjustment Act of 1933, 48 Stat. 31. On January 6, 1936, in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, the Supreme Court declared unconstitutional the taxes imposed by the 1933 Act. In 1939, under a special statute permitting suit, the plaintiff filed two proceedings in the Tax Court for refund of the processing taxes, and a suit in this court for refund of the floor stock taxes. Decisions of the Tax Court dismissing the actions for refund of the processing taxes were set aside by the Ninth Circuit, and the cases were remanded for further consideration. California & Hawaiian Sugar Refining Corp. v. Commissioner, 163 F.2d 531 (C.A.9, 1947), cert. denied, 332 U.S. 846, 68 S.Ct. 350, 92 L.Ed. 417 (1948). In January 1953, stipulated judgments were entered for the plaintiff in the two Tax Court cases, and the following October the Government accepted plaintiff's offer to compromise the Court of Claims case. Pursuant to the stipulated judgments and the compromise, the plaintiff received during 1953 (after it had become subject to federal income taxation) refund payments of processing and floor stock taxes totalling $970,507.41, and payments of interest totalling $1,042,624.02. It did not pay or allocate any portion of these refund payments, or the interest, to its patrons.

When it filed its income tax return for the taxable year ending December 31, 1953, the plaintiff included as income

the interest received with respect to the refunded taxes, but did not include as income the principal amounts of the refunds. During 1953 the plaintiff had properly accrued $269,372.46, incurred for legal and expert-witness fees in conjunction with the refund litigation. It deducted this entire amount on its return as an ordinary and necessary business expense.

In 1959, the Commissioner of Internal Revenue proposed, and ultimately assessed, a deficiency in 1953 income taxes of $499,163.85, plus interest, based upon the inclusion of the principal amount of the processing and floor stock tax refunds in gross income. In the alternative, the Commissioner proposed that, assuming the refunds of the principal amount of the taxes were not includible in gross income, the legal and expert-witness fees should be prorated between the tax refunds and the interest received thereon, and that only the portion of the fees allocable to the recovery of interest (which works out to $139,510.69) should be allowed as a deduction. The plaintiff paid the deficiency of $499,163.85, together with interest of $139,403.47, and in due course filed this suit to recover those payments.

■ The first issue is whether the principal amount of the processing and floor stock taxes refunded to the plaintiff in 1953 is income for that year or a nontaxable return of capital. The plaintiff contends that because it derived no income tax benefit from the payment of the unconstitutional taxes in 1934 and 1935, by reason of its status at that time as an agricultural cooperative wholly exempt from federal income taxation, the refunds should be recognized as a nontaxable return of capital in 1953. We believe this position is correct.

■ An established principle, under the general provision of the Internal Revenue Code of 1939 (Section 22(a)) taxing "gains, profits, and income * * * from any source whatever," is that a refund of taxes illegally collected in prior years is not taxable income in the refund year unless the taxpayer had previously obtained a tax benefit on account of those taxes. Theoretically, a recovery of monies wrongfully exacted by the government is not income at all but a return of capital funds illegally taken from the taxpayer; where, however, the taxpayer has utilized the original impost to reduce income taxes, it is fair "to take [taxpayer] at its word" (see Ben Bimberg & Co., Inc. v. Helvering, 126 F.2d 412, 414 (C. A. 2, 1942), cert. denied, Ben Bimberg & Co. v. C. I. R., 317 U.S. 641, 63 S.Ct. 32, 87 L.Ed. 516) and to consider the refund as a new gain. This general justification for the tax benefit rule (in the present type of case) was spelled out by this court in Perry v. United States, 160 F.Supp. 270, at p. 271, 142 Ct.Cl. 7, at p. 9 (1958), involving the refund to a taxpayer of charitable contributions which he had made in prior years, where the court, speaking through Judge Whitaker, said that "the return to the taxpayer of the property he had tried to give away cannot possibly be considered as income—he merely got back his own property. It cannot possibly be considered as income, except on the ground that he had deducted from his income the amount contributed in each year, thus reducing his taxes." In the same case, Judge Madden, in a dissent on another point (joined by Judge Laramore), remarked (at p. 12 of 142 Ct.Cl., at p. 273 of 60 F.Supp.) that "one does not ordinarily acquire taxable income by collecting a debt, or by a refund of taxes which he never should have had to pay. The reason that the money was regarded as taxable in the special cases referred to was that, once having used the taxes paid or the bad debt as a tax deduction, the prospect of recovery was, *for income tax purposes,* written off, though as a legal claim it still existed. Having been written off, the later realization of the claim was, *again for tax purposes,* like a windfall to the taxpayer, and within the broad definition of taxable income."

This principle is reflected in the many cases holding a refund of taxes includible in the taxpayer's income of the re-

covery year where a prior tax benefit of some sort has been found,[1] but not in its absence.[2] The same theory underlay subsection (b) (12) of Section 22 of the 1939 Code (added in 1942) which provided that income attributable to the recovery during the taxable year of bad debts, taxes, or delinquency amounts, for which a deduction had been allowed in a prior taxable year, would not be included in gross income to the extent that the prior year's deduction had not resulted in a reduction of the taxpayer's income tax. In short, where there was no prior tax benefit, the recovery was to be excluded from gross income.[3]

█ The terms of Section 22(b) (12) do not apply to the present case because this taxpayer, being then exempt from federal income taxation, neither made a deduction nor received a credit for the taxes when it paid them in 1934 and 1935. But it does not follow that, by extending legislative relief in certain categories of these tax refund cases, Congress intended that comparable recoveries not mentioned in the amendment should be included in gross income. See Dobson v. Commissioner, 320 U.S. 489, 506, 64 S.Ct. 239, 88 L.Ed. 248; Tuttle v. United States, 101 F.Supp. 532, 122 Ct.Cl. 1 (1951); Perry v. United States, supra, 160 F.Supp. 270, 142 Ct.Cl. 7, (1958); Birmingham Terminal Co. v. Commissioner, 17 T.C. 1011, 1014 (1951); Treas.Reg. 118 § 39.22(b) (12)–1.[4] As the Government itself recognized

---

1. See Universal, Inc. v. Commissioner, 109 F.2d 616 (C.A.7, 1940); Electric Storage Battery Co. v. Rothensies, 57 F.Supp. 731 (E.D.Pa., 1944), affirmed, 152 F.2d 521 (C.A.3, 1945), reversed on other grounds, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946); Friehofer Baking Co. v. Commissioner, 151 F.2d 383 (C.A.3, 1945); Ben Bimberg & Co. Inc. v. Helvering, 126 F.2d 412 (C.A.2, 1942), cert. denied, Ben Bimberg & Co. v. C. I. R., 317 U.S. 641, 63 S.Ct. 32, 87 L.Ed. 516; Houbigant, Inc. v. Commissioner, 31 B.T.A. 954 (1934), aff'd per curiam, 80 F.2d 1012 (C.A.2, 1936), cert. denied, 298 U.S. 669, 56 S.Ct. 834, 80 L.Ed. 1392; Nash v. Commissioner, 88 F.2d 477 (C.A.7, 1937), cert. denied, 301 U.S. 700, 57 S.Ct. 930, 81 L.Ed. 1355; Bird v. United States, 241 F.2d 516 (C.A.1, 1957); Bartlett v. Delaney, 173 F.2d 535 (C.A.1, 1949), cert. denied, 338 U.S. 817, 70 S.Ct. 59, 94 L.Ed. 495; United States v. Detroit Moulding Corp., 56 F.Supp. 754 (E.D. Mich., 1944); J. I. Case Co. v. United States, 32 F.Supp. 754, 91 Ct.Cl. 144 (1940).

A tax benefit can be in the form of a deduction for the taxes originally paid, or a credit for those taxes, or an exclusion from gross income of the receipts from which the taxes were paid. See, e. g., Universal, Inc. v. Commissioner, supra, and Keystone National Bank in Pittsburgh v. United States, Civ. No. 12043, decided March 27, 1957, W.D.Pa., 57–2 U.S.T.C. 57,809.

2. See Boehm v. Commissioner, 146 F.2d 553 (C.A.2, 1945), affirmed on another issue, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78; National Forge & Ordnance Co. v. United States, 151 F.Supp. 937, 939–940, 139 Ct.Cl. 204, 208–209 (1937); Birmingham Terminal Co. v. Commissioner, 17 T.C. 1011 (1951); H. Sheldon Mfg. Co. v. Commissioner, 13 B.T.A. 1296, 1300 (1928); Central Loan & Investment Co. v. Commissioner, 39 B.T.A. 981 (1939).

3. The Committee report on the bill indicates that this subsection was intended to apply only where the taxpayer had been allowed a deduction for the recovered bad debt, tax, or delinquency amount. H.R.Rep. No. 2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 373, 409. Previously, some courts had adopted the rule, contrary to the view of the Board of Tax Appeals, that a recovery of a previously deducted bad debt was includible in income regardless of whether the deduction had resulted in a reduction of the taxpayer's tax. Compare the first opinion in Commissioner of Internal Revenue v. United States & International Securities Corp., 130 F.2d 894 (C.A.3, 1942), modified, 138 F.2d 416 (1943) with Citizens State Bank v. Commissioner, 46 B.T.A. 964 (1942). This result was reached on the theory that by taking a deduction the taxpayer had recovered its capital, whether or not the deduction resulted in a lessening of its income tax liability. Taking the deduction was thought sufficient to "close" the transaction, and a subsequent recovery was therefore held to be includible in gross income as a new gain.

4. The regulation, originally announced in T.D. 5454 (1945 Cum.Bull. 68), provided that tax benefit principles should apply to "other losses, expenditures, and accruals made the basis for deductions."

in Treasury Regulation 118 with respect to this very statutory exception, it is wholly appropriate, where a piece of corrective legislation simply applies a general principle to a particular area, to continue to apply the same principle in like areas left untouched by the Congress. In other words, if taxpayer's transaction is found on principle to be a return of capital, there is nothing in Section 22(b)(12) requiring or suggesting that it must now be included in gross income.

■ We can rightfully go back, then, to the general postulate that a refund of taxes illegally collected is not to be treated as income unless the taxpayer has previously received a tax benefit. In the cases which have characterized the refund as income, the taxpayer benefitted under the income tax laws by taking an effective deduction or credit for the taxes when paid, or by excluding from income the receipts from which the taxes were later paid. See footnote 1, supra. In the present case, plaintiff, being wholly exempt from federal income taxation, could not, and did not, obtain any tax benefit from the invalid taxes it paid in 1934 and 1935. Those monies continued, therefore, to retain their initial character as illegally exacted funds which were ultimately returned as capital to the plaintiff in 1953. Since the plaintiff sought no tax benefit, there is no reason to characterize the refund as income.

Defendant seeks to escape this conclusion by reversing the formulation of the controlling tax benefit principle. In defendant's submission, such refunded taxes are not returns of capital but rather are properly included, as a class, in gross income for the year of recovery and lose that basic character—purely as a matter of fairness—only if the taxpayer can show that his income taxes were not reduced in some prior year as a result of paying the invalid tax. It is necessary, defendant says, to view the transactions in this manner so as not to violate the principle of annual accounting for items of income and expense during fixed accounting periods which the Supreme Court prescribed in Burnet v. Sanford & Brooks, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931), when it precluded the offsetting of gain realized in one taxable year against net losses on the same transaction sustained in prior years.[5] However, this characterization of the recovery as essentially income, not a return of capital, conflicts (as we have pointed out) with primary tax and accounting principles as they have been applied by this and other courts; and, on the other hand, nothing in the concept of annual accounting calls upon us to deem this return of capital to be income for tax purposes. In Dobson v. Commissioner, 320 U.S. 489, 504, 64 S.Ct. 239, 88 L.Ed. 248 (1943), the Supreme Court distinguished Sanford & Brooks on the ground that it dealt with the taxability of receipts to defray operating expenses, rather than with "capital investments, the cost of which, if converted, must first be restored from the proceeds before there is a capital gain taxable as income." The Court thus expressly recognized a *return of capital* as outside the annual accounting system for items of *income*.

The Dobson case also disposes of defendant's contention that the processing and floor stock tax refunds cannot be a return of capital, but must be classed as taxable income, because the plaintiff treated the tax payments of 1934 and 1935 as closed transactions. The Court indicated that whether a transaction is closed for federal income tax purposes depends upon whether such a recognition of loss has in fact taken place in prior years as would necessitate calling the recovery income rather than return of capital.[6] To this end, it approved the Tax Court's solution of looking to prior years to determine the nature of the later recovery, notwithstanding that the taxpayer had regarded the transactions as clos-

5. See also Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944).

6. Congress has made the same judgment. See the history and background of Section 22(b) (12), as set forth in footnote 3, supra.

ed and completed, and had reflected the results in his income tax returns. See Dobson, supra, 320 U.S. at 491, 493, 64 S.Ct. at 242. In words applicable here, the Court stated "that no statute or regulation having the force of one and no principle of law compels the Tax Court to find taxable income in a transaction where as a matter of fact it found no economic gain and no use of the transaction to gain tax benefit" (at p. 506, 64 S.Ct. at p. 248).

Another of defendant's arguments is that the plaintiff did receive a tax benefit from the payment of the processing and floor stock taxes, because if it had not been required to pay those taxes the members of the cooperative would have received, and included in their gross incomes, larger distributions from plaintiff. This reduction in the tax liabilities of the cooperative's members is said to be a sufficient tax benefit to require the refund to be included in the cooperative's gross income. To show that it is proper to equate the cooperative to its members, defendant relies on the Ninth Circuit decision which ruled that the plaintiff was entitled to the refunds here sought to be taxed. California & Hawaiian Sugar Refining Corp. v. Commissioner, supra, 163 F.2d 531. But that opinion merely determined that an agricultural cooperative organized under the laws of California held the net proceeds of its operation in trust for its members, so that the cooperative, as trustee, rather than its members, bore the burden of the agricultural processing and floor stock taxes it sought to recover, within the meaning of Section 902 of the Revenue Act of 1936, 49 Stat. 1648, 1747, which required

the claimant in such a suit to have borne the tax burden. The Ninth Circuit's decision, turning on the scope of Section 902, was not intended, nor can it be regarded, as bearing upon the very different question of the existence of a tax benefit to plaintiff for federal income tax purposes. Nor is there any other basis for finding a tax benefit to plaintiff through its members. At the time it paid the processing and floor stock taxes it was, as we have said, completely exempt from federal income taxation. Even as to reserves established out of earnings and retained without allocation to members, it incurred no income tax liability. It was only later that Section 101(12) of the Internal Revenue Code of 1939 was amended to curtail this attribute of exemption for the cooperative. That some of plaintiff's members may possibly have received a tax benefit during the 1930's from the now refunded tax payments [7] cannot, under these circumstances, make the refunds any less a return of capital to the plaintiff. It was a separate entity at the time of the payments in 1934 and 1935—an entity entirely exempt from income tax. Under the amended law effective in 1952, the plaintiff is a separate taxable entity, and pays the regular corporate taxes to the extent it retains income earned within the year without allocating it to its patrons. § 101(12) (B), 1939 Code. This tax is not in lieu of the tax imposed on the patrons and shareholders.[8] If retained earnings are subsequently paid or finally allocated to them, they are included in the recipients' gross incomes at that time. § 22(a), 1939 Code; under the 1954 Code, see § 61(a) and Treas.

7. There is no showing that any of the members did actually obtain a tax benefit as a result of the payment by plaintiff of the invalid taxes.

8. However, Congress did not intend to insure a double tax—both at the association and the patron (and shareholder) levels—upon the earnings of an exempt cooperative. The Senate Finance Committee, which proposed the amendment, believed "that the securing of a single tax with respect to substantially all of the income of cooperatives should be sufficient in view of the unique characteristics of a cooperative." S.Rep. No. 781, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 458, 473, U.S.Code Cong. and Admin. Service 1951, p. 1990. It was to encourage payment or allocation of earnings to their patrons, so that the latter would become taxable thereon, that exempt cooperatives were made separate taxable entities to the extent they retained earnings without allocating them to their patrons.

Reg. § 1.61–5 (1957), as amended, T.D. 6428, 1959–2 C.B. 26.[9] Since the cooperative, to the extent it incurs an income tax liability, is treated as an entity separate and distinct from its patrons, the nature of a recovery by the cooperative is not governed by the existence or non-existence of a prior tax benefit to the patrons. The situation is not similar to that faced in Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). There, the Court refused to allow a recovery by a trustee of taxes erroneously paid by it, but which should have been paid by the sole beneficiary, because a tax would otherwise never have been paid on the income, which in equity belonged to the beneficiary, since the statute of limitations barred collection from her. Here, there is no such avoidance of income taxes as the Supreme Court sought to avert in Stone v. White. In the future when the cooperative pays or allocates the refunded amounts to the shareholders and patrons, they will include them in their gross incomes.[10] But while those sums remain in the cooperative's treasury they are not income for 1953 and not treated or subject to tax as such. (In a comparable case, the Tax Court has recently reached the same result. The Home Savings and Loan Co. v. Commissioner, 39 T.C. No. 32, decided Nov. 7, 1962.)

Having decided that refunds of the principal amounts of the processing and floor stock taxes constituted a return of capital to the plaintiff in 1953, we must reach the second issue of whether the entire amount incurred, and properly accrued, in 1953 for legal and expert-witness fees in securing the refunds is deductible under Section 23(a) (1) (A) of the 1939 Code as an ordinary and necessary business expense. The plaintiff claims them all, but the defendant denies the propriety of the deduction for so much of the fees as are allocable to the recovery of the principal amount of the recovered taxes.[11] As usual in controversies over the deductibility of attorneys' fees and other litigation expenses, the parties invoke different provisions of the Code. Plaintiff relies on Section 23(a) (1) (A), the general authority for deducting "[a]ll the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Defendant says that legal expenditures attributable to a return of capital are not such "ordinary and necessary expenses"; it stands on Section 24(a) (2), which provides that in computing net income no deduction is allowable for amounts paid "for new buildings or for permanent improvements or betterments made to increase the value of any property or estate * * *", and upon Treasury Regulation 118, Section 39.24(a)–2, issued thereunder, which declares (in part):

"Capital expenditures. (a) *Expenditures except non-depreciable mine development expenditures.* Amounts paid for increasing the capital value of property or for making good the depreciation (for which a deduction has been made) of property are not deductible from gross income. * * * The cost of defending or perfecting title to property constitutes a part of the cost of the

---

9. For requirements as to the finality and usability of the allocation before the shareholder can be taxable, see Long Poultry Farms v. Commissioner, 249 F. 2d 726 (C.A.4, 1957; Moe v. Earle, 226 F.2d 583 (C.A.9, 1955) cert. denied, 350 U.S. 1013, 76 S.Ct. 657, 100 L.Ed. 873 (1956); and the amendment to Treas. Reg. § 1.61–5, supra.

10. In holding that the plaintiff was in a position to recover these invalid taxes, the Ninth Circuit said that to allow such a suit (California & Hawaiian Sugar Re-

fining Corp. v. Commissioner, supra, 163 F.2d at 535) "provides no unjust enrichment to the cooperative which must return to its members the recovered amount of the illegal tax, if it has not otherwise transferred its burden."

11. Defendant acknowledges the deduction insofar as it relates to the recovery of interest on the illegally collected taxes and would recognize the deduction in full if we were to hold the entire recovery (principal plus interest) to be includible in 1953 income.

property and is not a deductible expense. The amount expended for architects' services is part of the cost of the building. * * *"

■ Taken together, these sections of the Code and the regulations require that, before the expenditures can be deductible, they must be (a) "ordinary and necessary"; (b) "paid or incurred during the taxable year"; (c) paid or incurred "in carrying on any trade or business"; and (d) other than "permanent improvements or betterments made to increase the value of any property or estate", including expenditures incurred in "defending or perfecting title to property." See Industrial Aggregate Co. v. United States, 284 F.2d 639, 644 (C.A.8, 1960). It is not disputed, and correctly so, that the expenditures in issue were ordinary and necessary, and paid or incurred during the year in carrying on a trade or business. The question is whether the denial of a deduction for amounts paid "for permanent improvements or betterments made to increase the value of any property or estate * * *", including "the cost of defending or perfecting title to property," was intended to apply to litigation expenses arising out of tax refund contests where the sole issue was the legality of the tax. We think not, because a tax refund, though it may be a return of capital, is not the kind of "property" to which the statute and regulation refer.

Section 24(a) (2) and its implementing regulations normally apply to tangible or intangible property which has a *basis.* This becomes clearer when these provisions are read in conjunction with Section 113(b) (1) (A) of the Code, providing that adjusted basis for the determination of gain or loss from the disposition of property shall be adjusted "[f]or expenditures * * * properly chargeable to capital account," and Treas. Reg. 118, § 39.113(b) (1)–1(b), which further explains the section by adding, *inter alia,* "including the cost of improvements and betterments made to the property." Unlike expenditures to recover a tax, or to forestall the collection of a tax,

expenditures made in connection with the defense or perfection of title to both tangible and intangible property (such as real estate, securities, chattels, etc.) can be taken into account in determining gain or loss, at the time the property is disposed of, by the simple course of adjusting the basis, or "tax cost," of the property. By denying an immediate deduction for expenditures of a capital nature, but instead allowing an addition to the basis of the property, the tax benefit (from a decreased gain or an increased loss, as the case may be) is deferred until disposition of the property, and the expenditure, rather than in all cases being a deduction from ordinary income, is afforded the same tax treatment—as an adjustment to the basis of an ordinary or capital asset—as the property itself. On the other hand, where expenditures are made to secure a refund of taxes, or to contest the payment of additional sums under an asserted tax deficiency, there is no corresponding adjustment to basis. The tax money recovered or withheld from the Government does not have a basis for the taxpayer, other than its face amount, which can be taken into account when it is later converted into an asset of a different character or otherwise disposed of. The concept of "basis" has no real application to the taxpayer's money which has been unlawfully taken from him by the Government and then given back. Thus, while the law denies a deduction for the expenses of perfecting or defending title to property which has a basis, as being capital expenditures—preferring that those expenditures be taken into account in another manner—it does not require that expenditures associated with a return of capital which is not such property must also be treated as capital expenditures.

It is for this reason that our decision in Towanda Textiles, Inc. v. United States, 180 F.Supp. 373, 149 Ct.Cl. 123, (1960), is not controlling here. In Towanda the corporate taxpayer incurred legal expenses to collect insurance on a building that had been destroyed by fire. We found the recovery to include an ele-

ment of gain not recognizable to the taxpayer under Section 337 of the Internal Revenue Code of 1954, and denied a deduction for the legal expenses incurred in obtaining the cash recovery. We reached this conclusion by drawing an analogy to the rule that, when a capital asset is converted or disposed of, expenses incurred in the realization of gain from the disposition of the asset must be deducted from the gross amount received in order to arrive at the net gain for tax purposes. Towanda Textiles, Inc. v. United States, supra, 180 F.Supp. 373, 149 Ct.Cl. at 131. The holding thus treated the insurance proceeds as property, in place of the building, with the expenditures to be accounted for in calculating the taxpayer's gain or loss. The court did not attempt to assimilate expenditures connected with the disposition of property, with which it was dealing, to legal expenditures involved in any type of return of capital. In the tax law, "capital" is a word of many meanings and varying consequences, depending on the context and connotations. The rule that legal expenditures are non-deductible when made in connection with certain "capital" transactions does not mean that, by a Pavlovian reflex, they must always be non-deductible when "capital" is involved, though the transaction and occasion differ radically.

Munson v. McGinnes, 283 F.2d 333 (C. A.3, 1960), cert. denied, 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103 and Pennroad Corp. & Affiliated Companies v. Commissioner, 21 T.C. 1087 (1954), aff'd on another issue, 228 F.2d 329 (C. A.3, 1955), involved comparable situations in which expenditures to realize a capital gain, or to minimize a capital loss, on investments in property were held not to be deductible as ordinary and necessary business expenses. In the former, the taxpayer incurred legal fees in re-

opening a fraudulent transaction and obtaining an additional sum for his stock. The recovery resulted in an additional capital gain on the transaction, and the court denied the taxpayer the right to deduct the legal fees, on the ground that they were capital expenses which should be deducted from the gross amount recovered in determining the additional gain realized. In Pennroad Corp. v. Commissioner, supra, the taxpayer obtained cash restitution because of investments it had been required to make in the shares of other corporations at prices in excess of their value. Taxpayer had disposed of some of the investments at a loss, and had retained others, although it appeared that large losses would ultimately be incurred upon their disposition. As the recovery was far less than the capital losses taxpayer had suffered, the recovery was held to be a non-taxable return of capital, and the legal expense involved in securing the recovery was held to be a non-deductible capital expenditure. As we view the case, it involved the question of what was the proper amount for The Pennroad Corporation to pay for the capital assets, i. e., the securities. The net recovery, to the extent it exceeded the legal expense incurred in procuring it, served to reduce their cost. We do not doubt that, had the recovery resulted in a gain to the taxpayer, rather than serving to reduce its losses, the Tax Court would have recognized, as the Third Circuit did in Munson v. McGinnes, supra, that the legal expense was in the nature of a capital expenditure which should be applied to reduce the gain realized from the disposition of the property. The decision is simply one of many refusing deductions from ordinary income for expenditures made to realize capital gains, or minimize possible capital losses, from the disposition of property.[12] Included in that

---

12. The Tax Court in Pennroad Corp. v. Commissioner relied in part upon the decision of the Eighth Circuit in Helvering v. Stormfeltz, 142 F.2d 982 (1944). In Stormfeltz, the taxpayer, upon reaching majority, had brought an action at law for damages against his former guardian and a surety to recover money alleged to be due him which the guardian had embezzled or converted to his own use. This action had resulted in a recovery of principal and interest thereon. The Commissioner of Internal Revenue denied the taxpayer a deduction under Section 23(a)

general class are the decisions which deny deductions for professional fees incurred in connection with obtaining, perfecting, or defending *title to property* on the ground that the expenditures were capital in nature. See Boulder Building Corp. v. United States, 125 F.Supp. 512 (W.D.Okl., 1954) (acquisition by corporation of its own shares); Johnson v. Commissioner, 162 F.2d 844 (C.A.5, 1947) (recovery of possession by lessor resulting in acquisition of building that tenant had constructed while in possession); United States v. St. Joe Paper Co., 284 F.2d 430 (C.A.5, 1960) (acquisition of equity interest in railroad); Safety Tube Corp. v. Commissioner, 168 F.2d 787 (C.A.6, 1948) (defending title to patent). See, also, Davis v. Commissioner, 151 F.2d 441 (C.A.8, 1945) (expenses of sale).

Conversely, there is an intrenched line of authority, very close to the present case, authorizing the deduction of legal fees incurred in obtaining certain returns of capital outside the purview of Section 24(a) (2) and its regulation. In the computation of taxable income, Congress has not allowed a deduction for federal income taxes paid, § 23(c) (1), 1939 Code, and their subsequent refund has been considered a non-taxable return of capital rather than an increment to be included in gross income under Section 22(a). Nevertheless, it is a well established rule that legal and accounting fees paid by a taxpayer in litigating his federal income tax liability are permissible deductions. See Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670 (1945); Hopkins v. Commissioner, 271 F.2d 166 (C.A.6, 1959); Standing v. Commissioner, 259 F.2d 450 (C.A.4, 1958); Commissioner v. Schwartz, 232 F.2d 94 (C.A.5, 1956); Williams v. McGowan, 152 F.2d 570, 162 A.L.R. 1036 (C.A.2, 1945); Kales v. Commissioner, 101 F.2d 35, 122 A.L.R. 211, (C.A.6, 1939); Connelly v. Commissioner, 6 T.C. 744 (1946); Cammack v. Commissioner, 5 T.C. 467 (1945); Greene Motor Co. v. Commissioner, 5 T.C. 314 (1945); Manning v. Commissioner, 3 T.C. 853 (1944) aff'd per curiam, 148 F.2d 821 (C.A.6, 1945).

Some of the cases so holding involve deductions claimed by individual and corporate taxpayers under Section 23(a) (1) (A) of the 1939 Code (or its predecessors) as ordinary and necessary business expenses, and others involve deductions by individuals under Section 23 (a) (2) as non-business expenses for the management, conservation, or maintenance of property held for the production of income. These two subsections are comparable and *in pari materia*. The congressional purpose in adding Subsec-

(2) of the 1939 Code for so much of the legal expenses incurred in conducting this action as were allocable to the recovery of capital. The Eighth Circuit, in a decision rendered before the Supreme Court defined the scope of Section 23(a) (2) in Trust of Bingham v. Commissioner, infra, 325 U.S. 365, 65 S.Ct. 1232, 89 L. Ed. 1670 (1945), upheld denial of the deduction on the ground that the expenditure was not within the statutory allowance of a deduction to individuals for "ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income." The court stated that "[e]xpenses for management, conservation or maintenance imparts the idea of utilization and preservation of specific property owned and used by the taxpayer"—which was not deemed true in that case. After thus deciding that there was no affirmative statutory authorization for the deduction of the legal fees, the court commented that "[t]he expenses here are analogous to expenditures incurred for the purpose of protecting title to property. It has been held that under this amendment such expenses are not deductible because they are capital expenditures. Bowers v. Lumpkin, 4 Cir., 140 F.2d 927, 929, [151 A.L.R. 1336]." Helvering v. Stormfeltz, supra, 142 F.2d at 984. If this summary declaration that legal expenditures related to a recovery of capital are non-deductible capital expenditures was intended as applicable to all returns of capital, it was dictum at best, and in our view far too broad. Bowers v. Lumpkin, supra, 140 F.2d 927 (C.A. 4, 1944), upon which the Eighth Circuit relied, was a case involving expenditures to defend the taxpayer's title to stock.

tion 23(a) (2) to the 1939 Code was simply "to provide for a class of non-business deductions coextensive with the business deductions allowed by § 23(a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income." Trust of Bingham v. Commissioner, supra, 325 U.S. at 373–374, 65 S.Ct. at 1236–1237; McDonald v. Commissioner, 323 U.S. 57, 61–62, 65 S.Ct. 96, 89 L.Ed. 68 (1944); Munson v. McGinnes, 283 F.2d 333, 335–336 (C.A.3, 1960), cert. denied, 364 U.S. 880, 81 S.Ct. 171, 5 L.Ed.2d 103; Bowers v. Lumpkin, 140 F.2d 927, 928–929, 151 A.L.R. 1336 (C.A. 4, 1944); H.R.Rep.No.2333, 77th Cong., 1st Sess. (1942), 1942–2 C.B. 373, 410; S.Rep.No.1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 504, 570–71. The new subsection "did not enlarge the range of allowable deductions of 'business' expenses," McDonald v. Commissioner, supra, 323 U.S. at 62, 65 S.Ct. at 98, nor did it alter the rule that expenses of acquiring or recovering title to property, or of perfecting title, are capital expenses which constitute a part of the cost or basis of the property. It simply enlarged the category of income from which expenses could be deducted. Bowers v. Lumpkin, supra, 140 F.2d at 928–929. This being so, the decisions on the deductibility of legal fees under both subsection (a) (1) (A) and subsection (a) (2) are equally instructive in the present case.[13]

Rulings like E. S. Briant, Administrator v. Commissioner, 6 B.T.A. 651 (1927), and Croker v. Commissioner, 12 B.T.A. 408 (1928), also implicitly recognize the difference between expenditures to secure a return of capital, such as a tax refund, and capital expenditures incurred to maintain or increase the value of a capital asset. In these cases the Board of Tax Appeals allowed deduction of legal fees incurred to secure the return of amounts owed to the taxpayers. The Board was not troubled by the possibility that these expenditures might be non-deductible capital expenditures. The primary aspect of each case was whether the expenditures met the criterion of ordinary and necessary business expense. It is significant that, in determining the tax treatment to be afforded these expenditures, the Board did not consider that deduction of the fees might be prohibited as expenditures for improvements or betterments to property, although provisions denying deductions for such expenditures can be found in the revenue acts as far back as 1919. 40 Stat. 1069, 1080, ch. 18, §§ 215, 235. To the same effect would seem to be Tobin Packing Co. v. Commissioner, 43 B.T.A. 642 (1941), in which the Board allowed the deduction of legal expenses incurred in successfully contesting payment of taxes imposed under the Agricultural Adjustment Act of 1933.

This latter line of authority (the decisions upholding the deductibility of legal fees incurred in obtaining income tax refunds or other monies owed the taxpayer) are persuasive that the plaintiff's litigation expenses were permissible deductions within the scope of Section 23 (a), rather than non-deductible expenditures under Section 24(a) (2) (and its regulation), even though the tax refunds were returns of capital and not income. In Trust of Bingham v. Commissioner, supra, 325 U.S. 365, 374, 65 S.Ct. 1232,

13. Cases such as Green v. Commissioner, 3 T.C. 74 (1944), rev'd on other grounds, Nunan v. Green, 8 Cir., 146 F.2d 352; Hogan v. Commissioner, 3 T.C. 691 (1944); McFaddin v. Commissioner, 2 T.C. 395 (1943), considered on other grounds, 5 Cir., 148 F.2d 570 (1945); Willmott v. Commissioner, 2 T.C. 321 (1943); and Coffey v. Commissioner, 1 T.C. 579 (1943), aff'd on other grounds, 141 F.2d 204 (C.A.5, 1944), must be excluded from consideration, because they were decided before the Supreme Court defined the scope of subsection 23(a) (2) more broadly in Trust of Bingham, supra, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670. Compare the two decisions in Stoddard v. Commissioner, 141 F.2d 76 (C.A. 2, 1944), 152 F.2d 445 (C.A.2, 1945).

1237, 89 L.Ed. 1670, the Supreme Court held that "there is no requirement that business expenses be for the production of income." In expressly ruling that expenses of contesting income tax deficiencies are deductible under Section 23(a) (2), the opinion said (at 376) that this section "does not restrict deductions to those litigation expenses which alone produce income. On the contrary, by its terms and in analogy with the rule under § 23(a) (1), the business expense section, the trust, a taxable entity like a business, may deduct litigation expenses when they are directly connected with or proximately result from the enterprise * * *." [14] If the interpretation of Section 24(a) (2) urged by the defendant—that legal expenses incurred to secure a return of capital are always nondeductible capital expenditures—is correct, Trust of Bingham and the long-established judicial recognition of the deductibility of legal fees incurred in federal income tax litigation must be considered erroneous. To that we could not agree. As explained above, we believe that, both in theory and on authority, those holdings should be followed and that Section 24(a) (2) does not govern legal expenses involved in tax refunds.

In this connection, there is one other matter which calls for some mention. Section 24(a) (5) of the 1939 Code precludes a deduction for "[a]ny amount otherwise allowable as a deduction which is allocable to one or more classes of income * * * wholly exempt from the taxes imposed by this chapter * * *." This provision has the effect of denying a deduction to a business for expenses it incurs in procuring a tax refund which is considered to be income because the amount of the tax was deducted when paid, and yet is excluded from gross income under Section 22(b) (12) because the deduction did not result in a decrease in the taxpayer's tax liability. (See the discussion of Section 22(b) (12), supra.)

It may be said, first, that to allow deduction of legal expenses incurred to obtain a refund of taxes which is denominated a "return of capital," and at the same time to deny deduction of similar expenses incurred to obtain a refund of taxes called "income" that is "exempt from taxation under this chapter," is to place undue emphasis upon formal terminology, and second, that we ought to follow the policy embodied in Section 24(a) (5) even though the language does not literally apply to the plaintiff, because it, being exempt, did not have occasion to deduct the involved processing and floor stock taxes when it paid them in 1934 and 1935.

Our view, however, is that the thrust of Section 24(a) (5)—as it incorporates Section 22(b) (12)—does not extend to the present case. The differences are more than formal. Congress prohibited the deduction of litigation expenses in tax refund cases only where (i) the taxpayer had previously deducted or credited the improper tax in computing his tax, (ii) the deduction or credit had been allowed, and (iii) it had not reduced his income tax. Congress thus limited its rule to taxpayers who had initially sought a possible tax advantage by affirmatively asking a deduction or credit for the illegal tax when paid; it was only in that instance that the subsequent tax refund was denominated "income." For such taxpayers who tried to obtain a tax advantage, Congress chose not to allow the deduction of the legal expenses of obtaining a later refund. But Congress did not deal at all with the taxpayer who paid the illegal tax but sought no income tax advantage through a deduction or credit, either because he did not so desire or because (like plaintiff) he was wholly exempt from federal income taxation. The taxpayer who took no deduction or credit, though one was available to him, is beyond the terms and policy of Section 24(a) (5); his recovery is not even called "income" and he can deduct his

---

14. Trust of Bingham, 325 U.S. at 376–377, 65 S.Ct. 1232, 89 L.Ed. 1670, invalidated a Treasury Regulation which purported to deny deductions of expenditures incurred for the purpose of recovering the principal amount of taxes (other than recoveries required to be included in income).

legal fees under the principles and precedents we have discussed earlier. Similarly, the plaintiff who was exempt from income tax when it paid the unlawful taxes, and therefore did not have to consider whether it should seek a tax advantage, is outside the circle Congress carefully drew. Plaintiff sought no tax advantage and the policy of Section 24(a) (5) does not apply to deny it a deduction for legal expenses incurred in procuring a tax refund which constitutes a return of capital.

For these reasons, the plaintiff is entitled to recover on both issues, with interest as provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c).

DURFEE and LARAMORE, Judges, concur.

WHITAKER, Judge (dissenting in part).

It is erroneous to say that the return to the taxpayer of the processing and floor stock taxes paid by it in a former year was a "return of capital." In the prior year the taxpayer paid these taxes as a part of the cost of doing business; so, it seems to me, the return of them in a later year was a return of an expense item, using the word "expense" in a broad sense, that is, the cost of realizing income. It was not the "return of capital," but the return of an expense item.

This distinction is clearly drawn by the Supreme Court in Burnet v. Sanford & Brooks Co., 282 U.S. 359, at 363, 51 S.Ct. 150, at 151, 75 L.Ed. 383, where the Court said:

"That the recovery made by respondent in 1920 was gross income for that year within the meaning of these sections cannot, we think, be doubted. The money received was derived from a contract entered into in the course of respondent's business operations for profit. While it equalled, and in a loose sense was a return of, expenditures made in performing the contract, still, as

the Board of Tax Appeals found, the expenditures were made in defraying the expenses incurred in the prosecution of the work under the contract, for the purpose of earning profits. They were not capital investments, the cost of which, if converted, must first be restored from the proceeds before there is a capital gain taxable as income. See Doyle v. Mitchell Brothers Co., supra, p. 185 of 247 U.S. [179] 185 [38 S.Ct. 467, 62 L.Ed. 1054]."

This case was quoted with approval by the Supreme Court in Dobson v. Commissioner, 320 U.S. 489, at page 504, 64 S.Ct. 239, at page 247, where the Court said:

"The Government relies upon Burnet v. Sanford & Brooks Co., 282 U.S. 359 [51 S.Ct. 150, 75 L.Ed. 383], for the proposition that losses of one year may not offset receipts of another year. But the case suggested its own distinction: 'While [the money received] equalled, and in a loose sense was a return of, expenditures made in performing the contract, still, as the Board of Tax Appeals found, the expenditures were made in defraying the expenses * * *. They were not capital investments, the cost of which, if converted, must first be restored from the proceeds before there is a capital gain taxable as income.' 282 U.S. at 363–64 [364, 51 S.Ct. at 151]."

Our decision in Perry v. United States, 160 F.Supp. 270, 142 Ct.Cl. 7, does not depart from this distinction. There the taxpayer offered certain property to the Town of Fitzwilliam, New Hampshire, on condition that it would be devoted to a certain purpose. The town was unwilling to devote it to this purpose, and returned the property to the taxpayer. The taxpayer insisted that the return of the property to it was a "return of capital," but it admitted liability for taxes on the income which had accrued in the interim on the corpus offered to the town. We said in this case that the taxpayer merely got back property which it had offered

on condition, because the donee was unwilling to comply with the condition and, therefore, was a "return of capital."

This differs from the case at bar. Here, in the prior year taxes, a necessary element of the cost of earning income, were paid, and were later returned. This does not seem to me to be "return of capital," but the return of an expense item.

As evidence of this, I cite the difficulty which the majority opinion had in avoiding the rule that the expense of the recovery of capital is not deductible from ordinary income, but is to be treated as a capital expenditure, to be added to the cost of the capital item, in determining the gain realized on a later sale of it. It seems to me to be altogether anomalous to say that the recovery of the process and floor stock taxes was not income, and at the same time allow the taxpayer a deduction for the cost of recovering it.

Although I do not agree that the return of these taxes was a return of capital, but an income item, I do agree that they are not to be included in taxable income, since in the prior year the taxpayer had received no tax benefit from the deduction of them. If they are not to be included in taxable income, the cost of their recovery is not deductible because of the provisions of section 24(a) (5) of the Internal Revenue Code of 1939. This section says that "Any amount otherwise allowable as a deduction [such as legal expenses] which is allocable to one or more classes of income * * * wholly exempt from the taxes imposed by this chapter," is not allowable as a deduction in computing that income.

For these reasons I respectfully dissent from the allowance of the legal expenses as a deduction from plaintiff's taxable income.

JONES, Chief Judge (dissenting in part).

I agree with the majority on the first issue.

Since the plaintiff during the period when the illegal tax was levied and collected was wholly exempt under the law from the payment of any income tax whatever, there was no occasion to either file an income tax return or to claim a deduction. It is clear, therefore, that the refund when made was not income but a matter of restoring its capital.

On the second issue, as to legal expenses, section 39.24(a)–2(a) of Treasury Regulation 118 contains this language:

"The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense."

This regulation was issued pursuant to section 24(a) (2) of the Internal Revenue Code of 1939. It had been in effect for a number of years without material change. The courts have repeatedly held that legal expenses incident to capital transactions are not deductible as ordinary and necessary business expenses. In Pennroad Corp. & Affiliated Companies v. Commissioner, 21 T.C. 1087, 1099, the Tax Court held in a case involving recovery of capital through litigation that "[i]t is well settled that expenses of acquiring, perfecting, or recovering title to property are nondeductible capital expenses." [Citing cases.]

An effort is made to distinguish between stock, bonds, and real estate on the one hand and money on the other. I do not believe there is such a valid distinction in a case of this kind. Most corporations treat money as capital. In fact, most corporations when organized sell stock for money and put the money thus obtained in a capital and operating fund. In the light of the wording of the regulation I do not believe the plaintiff is entitled to recover the expenses incurred in connection with the litigation involved here, however equitable it might be in the absence of the statute and regulation.

I therefore dissent from the conclusion of the majority on the second issue.